**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AMI HOROWITZ,<br><br>    Plaintiff,<br><br>    v.<br><br>AJP EDUCATIONAL FOUNDATION, INC.<br>d/b/a AMERICAN MUSLIMS FOR<br>PALESTINE, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-3412 (ALC) |

**MEMORANDUM IN SUPPORT OF DEFENDANT AJP EDUCATIONAL**
**FOUNDATION, INC. d/b/a AMERICAN MUSLIMS FOR PALESTINE'S**
**MOTION TO DISMISS UNDER RULES 12(b)(1), 12(b)(2), AND 12(b)(6)**

BELDOCK LEVINE & HOFFMAN LLP
99 Park Ave., PH/26th Floor
New York, New York 10016

MUSLIM LEGAL FUND OF AMERICA,
Legal Division
100 N. Central Expy. Suite 1010
Richardson, Texas 75080

*Attorneys for Defendant AJP Educational Foundation, Inc.*
*d/b/a American Muslims for Palestine*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

I.    INTRODUCTION ............................................................................................. 1

II.   FACTS AND PROCEDURAL HISTORY .................................................... 1

III.  STANDARDS OF REVIEW ........................................................................... 6

      A.    Federal Rule of Civil Procedure 12(b)(1) .................................... 6

      B.    Federal Rule of Civil Procedure 12(b)(2) .................................... 7

      C.    Federal Rule of Civil Procedure 12(b)(6) .................................... 8

      D.    Judicial Notice ................................................................................. 8

IV.   ARGUMENT .................................................................................................... 9

      A.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims.... 9

      B.    This Court Lacks Personal Jurisdiction Over AMP ............................... 11

      C.    Plaintiff Fails to State a Claim for Aiding and Abetting Assault and
           Battery ................................................................................................ 13

      D.    Plaintiff Fails to State a Claim for Civil Conspiracy to Commit Assault
           and Battery .......................................................................................... 15

      E.    AMP's Actions Merit First Amendment Protection ............................. 17

      F.    AMP is Entitled to Fees and Costs Under New York's Anti-SLAPP Law
           ............................................................................................................ 17

V.    CONCLUSION ............................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................. 22

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*
   828 F. Supp. 2d 557 (E.D.N.Y. 2011) ................................................. 11

*Actava TV, Inc. v. Joint Stock Co. "Channel One Russ. Worldwide"*
   No. 18-cv-06626 (ALC), 2023 U.S. Dist. LEXIS 43933 (S.D.N.Y. Mar. 15, 2023) ........... 2, 9

*Adelson v. Harris*
   774 F.3d 803 (2d Cir. 2014) ................................................. 18

*Agoliati v. Block 865 Lot 300 LLC*
   No. 22-51, 2023 U.S. App. LEXIS 2011 (2d Cir. Jan. 26, 2023)........................................ 9, 10

*Alexander & Alexander, Inc. v. Fritzen*
   68 N.Y.2d 968 (1986) ................................................. 14, 15

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)................................................. 8

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.*
   968 F.2d 196 (2d Cir. 1992) ................................................. 7, 11

*Bobulinski v. Tarlov*
   758 F. Supp. 3d 166 (S.D.N.Y. 2024) ................................................. 18

*Brackett v. Griswold*
   112 N.Y. 454 (1889) ................................................. 15

*Carlson v. Am. Int'l Grp., Inc.*
   30 N.Y.3d 288 (2017) ................................................. 15

*Carrico v. Duo Wen, Inc.*
   No. 23-cv-00927 (ALC), 2024 U.S. Dist. LEXIS 153945 (S.D.N.Y. Aug. 27, 2024)............. 9

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*
   90 F. Supp. 3d 97 (S.D.N.Y. 2015) ................................................. 12

*Ciambriello v. County of Nassau*
   292 F.3d 307 (2d Cir.2002) ................................................. 15

*Cotton v. Slone*
   4 F.3d 176 (2d Cir.1993) ................................................. 18

*Daimler AG v. Bauman*
   571 U.S. 117 (2014)................................................. 12

*Deluca v. AccessIT Group, Inc.*
   695 F. Supp. 2d 54 (S.D.N.Y. 2010) ................................................. 9

*Doe 7015 v. Elektra Ent. Grp. Inc.*
   No. 21 CIV. 6868 (JPC), 2023 WL 2744102 (S.D.N.Y. Mar. 31, 2023) ................................ 14

*Fisk v. Letterman*
  424 F. Supp. 2d 670 (S.D.N.Y. 2006) ........................................................... 15

*Fronto King, LLC v. Talal*
  No. 1:20-cv-08035 (ALC), 2025 U.S. Dist. LEXIS 58947 (S.D.N.Y. Mar. 28, 2025) ............. 8

*GH Am. Energy LLC v. Greenalia Wind Power Blue Hills, LLC*
  No. 1:24-cv-05645-ALC, 2025 U.S. Dist. LEXIS 55668 (S.D.N.Y. Mar. 26, 2025) . 6, 7, 8, 12

*Green v Davies*
  182 NY 499 (1905) ...................................................................................... 15

*Heilbut v. Cassava Scies., Inc.*
  No. 24-cv-05948 (JLR), 2025 U.S. Dist. LEXIS 56283, 2025 WL 919654 (S.D.N.Y. Mar. 26, 2025) ........................................................................................................ 18

*In re Platinum-Beechwood Litig.*
  427 F. Supp. 3d 395 (S.D.N.Y. 2019) ........................................................... 16

*Int'l Shoe Co. v. Wash.*
  326 U.S. 310 (1945) .................................................................................... 11

*Kee v. Det. Lions, Inc.*
  No. 24-cv-223 (ALC), 2025 U.S. Dist. LEXIS 59545 (S.D.N.Y. Mar. 30, 2025) ................. 11

*Kirk v. Citigroup Glob. Mkt. Holdings*
  No. 20-cv-07619 (ALC), 2023 U.S. Dist. LEXIS 231038 (S.D.N.Y. Dec. 28, 2023) ........... 10

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*
  565 N.E.2d 488 (N.Y. 1990) ............................................................................ 7

*Lee v. Springer Nature Am., Inc.*
  769 F. Supp. 3d 234 (S.D.N.Y. 2025) .............................................................. 2

*Lindsay v. Lockwood*
  625 N.Y.S.2d 393 (Monroe Co. Sup. Ct. 1994) ............................................... 14

*601 E. 226 St. LLC v. United States Liab. Ins. Grp.*
  No. 24-cv-722 (ALC), 2025 U.S. Dist. LEXIS 57848 (S.D.N.Y. Mar. 27, 2025) .................. 2

*Loreley Fin. (Jersey) No 3 Ltd. v. Wells Fargo Sec., LLC*
  12-cv-3723 (RJS), 2016 WL 5719749 (S.D.N.Y. Sept. 29, 2016) .......................... 16

*Lupo v. Human Affairs Int'l*
  28 F.3d 269 (2d Cir. 1994) ............................................................................. 9

*Manning v. Beck*
  129 N.Y. 1 (1891) ........................................................................................ 15

*McNutt v. Gen. Motors Acceptance Corp.*
  298 U.S. 178 (1936) .................................................................................... 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*
  84 F.3d 560 (2d Cir. 1996) ............................................................................ 7

*NAACP v. Claiborne Hardware Co.*
  458 U.S. 886 (1982) .................................................................................... 17

*Naughright v. Weiss*
  826 F. Supp. 2d 676 (S.D.N.Y. 2011) ................................................................... 13

*Parizer v. AJP Educ. Found., Inc.*
  No. 1:24-cv-724 (RDA/IDD), 2025 U.S. Dist. LEXIS 158917 (E.D. Va. Aug. 15, 2025)....... 2

*Phillips v. City of New York*
  No. 21-cv-08149 (ALC), 2024. U.S. Dist. LEXIS 174656 (S.D.N.Y. Sept. 26, 2024)............ 8

*Scott v. Doordash*
  No. 24-CV-1783 (LTS), 2024 U.S. Dist. LEXIS 198015 (S.D.N.Y. Oct. 28, 2024) ............. 10

*Sharp v. Ferrante Law Firm*
  220 A.D.3d 587 (1st Dep't  2023) ........................................................................ 15

*Shea v. Cornell Univ.*
  192 A.D.2d 857 (3d Dep't 1993) .......................................................................... 13

*Shovah v. Roman Catholic Diocese of Alb.* (*In re Roman Catholic Diocese of Alb.*)
  745 F.3d 30 (2d Cir. 2014) ................................................................................... 12

*Snyder v. Phelps*
  562 U.S. 443 (2011) ............................................................................................. 17

*Sonera Holding B.V. v. Cukurova Holding A.S.*
  750 F.3d 221 (2d Cir. 2014) ................................................................................... 7

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*
  752 F.3d 239 (2d Cir. 2014) ................................................................................... 6

*Ventura v. Toledo*
  24-cv-5618 (JMF), 2024 U.S. Dist. LEXIS 138458 (S.D.N.Y. July 30, 2024)..................... 9

*Washington v. Network Presentations*
  No. 1:24-cv-00299 (ALC), 2025 U.S. Dist. LEXIS 61548 (S.D.N.Y. Mar. 31, 2025) 7, 11, 12, 13

*Watson v. NY Doe 1*
  No. 19-CV-533 (JGK), 2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023)................................. 18

*World Ass'n of Icehockey Players Unions N. Am. Div. v. NHL*
  No. 24-cv-01066 (MMG), 2024 U.S. Dist. LEXIS 216307 (S.D.N.Y. Nov. 26, 2024)........... 8

*World Wrestling Federation Entertainment, Inc. v. Bozell*
  142 F. Supp. 2d 514 (S.D.N.Y. 2001) .................................................................... 15

*Z.Q. v. N.Y.C. Dep't of Educ.*
  No. 1:20-cv-09866 (ALC), 2024 U.S. Dist. LEXIS 56726 (S.D.N.Y. Mar. 28, 2024)............ 6

## **Statutes**

28 U.S.C. § 1332 ...................................................................................................... 9

Civ. Rights Law § 70-a(1)(a) ..................................................................................... 19

N.Y. Civ. Rights Law § 70-a(1).................................................................................. 18

N.Y. Civ. Rights Law § 76-a(1)(a) ............................................................................. 18

N.Y. CPRL § 301 ....................................................................................................... 11

**<u>Rules</u>**

Court's Individual Rule of Practice 2(D)(ii) .......................................................... 1, 20

Fed. R. Civ. P. 12(b)(1)(2)(6) ................................................................................... 20

Fed. R. Evid. 201 ........................................................................................................ 8

## I.    INTRODUCTION

No laws create tort liability simply for engaging in lawful speech or associations, even when a plaintiff dislikes that speech. Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP" or "Defendant")[1] operates entirely in the United States and in full compliance with relevant laws. Plaintiff's 201-page Complaint consists of nothing more than unsupported conclusory allegations and inflammatory language, the near entirety of which bears no relevance to his claims that was allegedly assaulted by an unidentifiable "mob" at a protest on the campus of the City College of New York ("CCNY"). And Plaintiff does not bring these claims against the mob who allegedly assaulted him. Instead, buried deep within the Complaint, he makes far-fetched allegations that, distilled, allege that AMP, a national non-profit advocating for education of Americans about Palestine, somehow aided and abetted and/or conspired to commit an assault and battery of Plaintiff on April 26, 2024. Because Plaintiff fails to allege facts sufficient to support this Court's jurisdiction or facts sufficient to state a claim for relief, AMP respectfully requests this Court dismiss all of Plaintiff's claims against it in full, with prejudice pursuant to the Court's Individual Rule of Practice 2(D)(ii).

## II.    FACTS AND PROCEDURAL HISTORY[2]

Defendant AMP is a 501(c)(3) non-profit organization incorporated in California, with its principal place of business in Virginia. Compl. ¶ 10, ECF No. 1 (April 24, 2025). Today, and at all times relevant to the allegations in this lawsuit, AJP Educational Foundation, Inc. is the name

---

[1] AMP is a stand-alone organization with no corporate affiliation to separate defendant National Students for Justice in Palestine ("NSJP"). AMP takes no position in this Motion on the veracity of Plaintiff's claims against NSJP, and responds on its own behalf solely as to the allegations made against AMP.

[2] As most of Plaintiff's allegations in his 201-page Complaint do not relate to actions taken by Defendant AMP, AMP will recite herein only those allegations Plaintiff asserts against AMP.

of the single legal entity, with American Muslims for Palestine ("AMP") as its designated d/b/a.[3]

*See* Compl. ¶¶ 32-33. Since its founding in 2006, AMP's mission remains to "educat[e] the

American public about Palestine and its rich cultural, historical and religious heritage through

grassroots mobilization and advocacy."[4] AMP does its work entirely within the United States, and

neither accepts donations from outside of the United States nor sends money to any party outside

of the United States.[5] AMP is affiliated with the separately incorporated 501(c)(4) organization,

AJP Action, which engages in lobbying efforts that AMP cannot as a legally compliant 501(c)(3)

organization. *Id.* ¶ 33.

Plaintiff alleges that Defendant National Students for Justice in Palestine ("NSJP") "was

created and is operated by AMP to manage and control a network of hundreds of chapter and

affiliate organizations on campuses." *Id.* ¶ 15. However, AMP has no corporate relationship or

affiliation with NSJP, nor any control over the actions of NSJP. *See* Doc. 20, Corporate Disclosure.

In fact, Plaintiff alleges that an entirely different entity, WESPAC, "serves as NSJP's 'fiscal

---

[3] This Court may take judicial notice of AMP's publicly available incorporation documents and fictitious name certificate, available through the Virginia Secretary of State's website (entity ID F2044636). *See 601 E. 226 St. LLC v. United States Liab. Ins. Grp.*, No. 24-cv-722 (ALC), 2025 U.S. Dist. LEXIS 57848, at *12 (S.D.N.Y. Mar. 27, 2025) (taking judicial notice of public records reflecting fictitious names).

[4] American Muslims for Palestine, "About AMP," https://www.ampalestine.org/about-amp. This Court may take judicial notice of the contents of AMP's publicly available website, as there is no dispute about its authenticity or accuracy. *See Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 247 (S.D.N.Y. 2025) (finding that a court may take judicial notice of information on a public website).

[5] Plaintiff relies on the allegations against AMP presented in three lawsuits pending at the time of Plaintiff's Complaint. Complaint at 5 n.1. One of those lawsuits has since been dismissed in full against AMP for those plaintiffs' failure to state a claim and lack of subject matter jurisdiction. *See Parizer v. AJP Educ. Found., Inc.,* Civil Action No. 1:24-cv-724 (RDA/IDD), 2025 U.S. Dist. LEXIS 158917 (E.D. Va. Aug. 15, 2025). In any event. this Court need not, and should not, take judicial notice of those unproven allegations or accept them as true. *Actava TV, Inc. v. Joint Stock Co. "Channel One Russ. Worldwide"*, No. 18-cv-06626 (ALC), 2023 U.S. Dist. LEXIS 43933, at *8-9 (S.D.N.Y. Mar. 15, 2023).

sponsor,' receiving and administering donations made to NSJP." Compl., ECF No. 1, ¶ 40. Plaintiff alleges that AMP "sponsored the first SJP National Convention in 2010 . . . to unite and organize the various SJP chapters on college campuses across the country under its direction." *Id.* ¶ 34. Plaintiff also acknowledges that "NSJP has no formal corporate structure or independent legal existence of its own[,]" claiming that it operates "as AMP's project and primary brand for its operations aimed at college campuses." *Id.* ¶ 36. And, Plaintiff has not yet served NSJP. *See* ECF No. 17 (requesting a conference via Letter Motion to ultimately serve NSJP by publication, yet citing to a case where NSJP appears through counsel). Plaintiff alleges that AMP's stated mission to "advocate[e] for Palestinian self-determination and human rights against malicious Israeli military and political policies" is a "fig-leaf" presented to "conceal" AMP's actual purpose and goals. Compl. ¶ 41. Plaintiff references no factual allegations to support his conclusory statements.

Plaintiff baselessly alleges that AMP and NSJP collaborated with Hamas on October 7, 2023, to serve Hamas' "interests through propaganda and activism influencing American civil society." *Id.* ¶ 44. Plaintiff makes no allegations of any direct communication between AMP and Hamas, and instead inserts a series of conclusory statements about AMP's actions prior to and after Hamas' October 7 terrorist attacks. *Id.* ¶¶ 45-50. Similarly, Plaintiff asserts that AMP encouraged and directed violent actions on college campuses, without pleading facts to support that conclusion. *Id.* ¶¶ 56-62. Plaintiff directs this Court to what he purports to be three different "toolkits" presented by NSJP and others, but makes no allegations that AMP had anything to do with either the creation or distribution of the toolkits, nor that AMP had any involvement in their contents. *Id.* ¶¶ 63-87.

Plaintiff then discusses "the first phase of AMP and NSJP's campus operations," but again cites no social media or other posts by AMP related to the actions he describes in his Complaint.

*Id.* ¶¶ 88-110. Plaintiff's omission of any citation to any statements or posts by AMP repeats as to Plaintiff's conclusions about "AMP and NSJP's role in directly organizing and assisting protests and organization efforts by NSJP's chapters and affiliates" into 2024. *Id.* ¶¶ 111- 137. Plaintiff dedicates several pages of his Complaint to detailing events that happened at campuses across the country, most of them not in New York. *Id.* ¶¶ 138, 142, 145. In explaining what Plaintiff purports to be a concerted "encampment operation," Plaintiff again fails to tie any allegations to AMP's actions or statements. *Id.* ¶¶ 146-187. In fact, the first time Plaintiff actually refers to an action taken by one of AMP's officers does not appear until page 105 of his Complaint, where he then alleges only that AMP's Executive Director, Dr. Osama Abuirshaid, spoke at a peaceful press conference on Columbia University's campus. *Id.* ¶ 189. Plaintiff also alleges that Dr. Abuirshaid spoke to students at The George Washington University. *Id.* ¶ 190. Besides those two instances, Plaintiff alleges no facts to support his claim of AMP's involvement in any student actions at the City College of New York ("CCNY"), much less facts that would support allegations that AMP encouraged any violent, illegal, or anti-Semitic actions, in New York or anywhere else. *See generally id.* ¶¶ 202-225.

Not until page 127 does Plaintiff allege facts even remotely related to his claims. Compl. at 127. Plaintiff alleges that he entered the CCNY campus to film a video and see how protestors would react to him waving an American flag. *Id.* ¶ 226. He alleges that "he was rapidly surrounded by a mob of protestors from the NSJP encampment," who "immediately ripped the American flag from Horowitz [sic] hands, smashed it on the ground, and began beating him." *Id.* ¶¶ 227-28. He alleges that "hundreds of onlookers" witnessed the attack, which ended upon the arrival of campus police and the NYPD. *Id.* ¶¶ 228, 231. Plaintiff alleges that police detained him and informed him he had no right to be on campus, and "they would arrest him if he came back to the campus." *Id.*

¶ 232. In so stating, it appears that Plaintiff has conceded that he was on the campus illegally. *Id*. Plaintiff makes no allegations as to who attacked him, whether they were affiliated with the school, or whether they had any affiliation with Defendant AMP. Plaintiff alleges injuries from "the mob's attack" that include "bruises and wounds, primarily to his torso," for which he went to urgent care, and ongoing "physical therapy for his arm and shoulder." *Id.* ¶ 234. However he also appears to place blame for his injuries on non-party NYPD police officers who "treated Horowitz aggressively, bodily removing him from the scene in a tight armlock." *Id.* ¶ 232.

Plaintiff's subsequent allegations over the next 64 pages of his Complaint recount things that occurred in New York and elsewhere, which did not harm Plaintiff or have any direct effect on Plaintiff, and which he again largely fails to tie to AMP. *Id.* ¶¶ 239-343. Only a small handful of exceptions reflect statements by individuals alleged to be associated with AMP. Plaintiff alleges that AMP's New Jersey chapter encouraged its supporters to provide "jail support" for individuals arrested from Columbia University.[6] *Id.* ¶ 252. Plaintiff also cites posts by AMP's chapter in Connecticut, that purportedly show acts that took place on Yale University's campus. *Id*. ¶¶ 305, 334, 338. On page 152 of his Complaint, Plaintiff provides a screenshot purporting to be from the social media account of AJP Action, AMP's separately incorporated and non-party 501(c)(4) affiliate. The post decries the NYPD's violent tactics used in arresting students from Columbia University. Plaintiff characterizes another post by AJP Action – a separately incorporated entity – bringing attention to the police's aggressive tactics as "a false propaganda narrative," a characterization this Court need not accept as fact. *Id.* ¶ 269.

---

[6] AMP "chapters" consist of loose and informal groupings of volunteers with interest in AMP's local events, which are not formally incorporated.
*See*  https://www.ampalestine.org/organize/chapters (last visited August 19, 2025).

After 195 pages, of which about five address what happened to Plaintiff himself, Plaintiff asserts two causes of action against AMP – aiding and abetting assault and battery, and civil conspiracy to commit assault and battery. *See generally* Compl. ¶¶ 345-356. On June 3, 2025, Plaintiff served Defendant AMP with the summons and Complaint for both AMP and Defendant NSJP. When AMP's representative refused service for NSJP, the process server left the summons on the ground outside of AMP's office. Counsel for AMP informed Plaintiff's counsel that AMP could not accept service for NSJP, nor could counsel speak to how Plaintiff could serve NSJP. AMP's counsel also sought Plaintiff's counsel's consent to a brief extension to AMP's deadline to respond to Plaintiff's Complaint to July 24, 2025, to which Plaintiff consented. The Parties filed an unopposed letter on behalf of Defendant AMP on June 20, 2025 seeking an extension to respond (ECF No. 14), which this Court granted the same day (ECF No. 15). On July 23, 2025, Defendant AMP filed a pre-motion conference letter pursuant to the Court's Individual Rules of Practice. (ECF No. 19.) The Court granted Defendant AMP leave to file the present motion. This Motion to Dismiss now follows.

### III.    STANDARDS OF REVIEW

**A.    Federal Rule of Civil Procedure 12(b)(1)**

Federal courts possess limited jurisdiction and must have "statutory or constitutional power to adjudicate" a matter before them. *GH Am. Energy LLC v. Greenalia Wind Power Blue Hills, LLC*, No. 1:24-cv-05645-ALC, 2025 U.S. Dist. LEXIS 55668, at \*7 (S.D.N.Y. Mar. 26, 2025). Courts obtain jurisdiction either through allegations made under federal question jurisdiction or via complete diversity of parties. Where a plaintiff relies on diversity jurisdiction, there must be "complete diversity of citizenship" and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." *Id.*, at \*10-11. The party asserting jurisdiction bears the

burden of demonstrating that subject matter jurisdiction exists by a preponderance of the evidence. *Z.Q. v. N.Y.C. Dep't of Educ.*, No. 1:20-cv-09866 (ALC), 2024 U.S. Dist. LEXIS 56726, at *9 (S.D.N.Y. Mar. 28, 2024) (citing *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). District courts only presume the truth of uncontroverted factual assertions for jurisdictional purposes and draw only reasonable inferences in favor of the non-moving party. *Id.* Courts "may consider evidence outside of the pleading" when evaluating jurisdiction. *GH Am. Energy LLC*, 2025 U.S. Dist. LEXIS 55668, at *7.

## B.    Federal Rule of Civil Procedure 12(b)(2)

Courts maintain personal jurisdiction over parties through either general jurisdiction or specific jurisdiction. *Washington v. Network Presentations*, No. 1:24-cv-00299 (ALC), 2025 U.S. Dist. LEXIS 61548, at *8 (S.D.N.Y. Mar. 31, 2025) (explaining that New York's long-arm statute confers general jurisdiction to the furthest extent allowed by due process). Plaintiffs bear the burden of demonstrating that the court has jurisdiction over each defendant. *Id.*, at *9 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). In making this determination, courts need not accept as true any "legal conclusion couched as factual allegation." *Id.* (citing *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

General jurisdiction exists pursuant to New York law where a company "has engaged in such a continuous and systemic course of 'doing business' [in New York] that a finding of its 'presence' [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 565 N.E.2d 488, 490 (N.Y. 1990)) (alterations in original). Specific jurisdiction exists over a defendant in New York only where the claims arise out of one of the following actions by a defendant:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, except as to a

cause of action for defamation of character arising from the act; or 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a) (Consol. 2025). Plaintiffs must show that each of their claims arises from the defendant's contacts with New York State. *See World Ass'n of Icehockey Players Unions N. Am. Div. v. NHL*, No. 24-cv-01066 (MMG), 2024 U.S. Dist. LEXIS 216307, at \*24 (S.D.N.Y. Nov. 26, 2024) (declining to assert jurisdiction over a non-domiciled defendant where the plaintiff could not show that their specific claims arose from the defendants' actions in New York).

## C.    Federal Rule of Civil Procedure 12(b)(6)

Courts must dismiss a claim if a plaintiff's complaint does not "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *GH Am. Energy*, 2025 U.S. Dist. LEXIS 55668, at \*9 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs meet that standard where they plead "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court accepts all factual allegations in the complaint as true, and draws all reasonable inferences in favor of the plaintiff, but need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id.*, at \*10 (citing *Iqbal*, 556 U.S. at 678,681)). A court must rely on its "judicial experience and common sense" to determine whether a complaint states a plausible claim. *Fronto King, LLC v. Talal*, No. 1:20-cv-08035 (ALC), 2025 U.S. Dist. LEXIS 58947, at \*6 (S.D.N.Y. Mar. 28, 2025).

## D.    Judicial Notice

In considering a motion to dismiss, courts may review "matters of which judicial notice may be taken under Fed. R. Evid. 201." *Phillips v. City of New York*, No. 21-cv-08149 (ALC), 2024. U.S. Dist. LEXIS 174656, at *9 (S.D.N.Y. Sept. 26, 2024). These matters must be either "1) [] generally known within the trial court's territorial jurisdiction; or 2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Carrico v. Duo Wen, Inc.*, No. 23-cv-00927 (ALC), 2024 U.S. Dist. LEXIS 153945, at *9 (S.D.N.Y. Aug. 27, 2024). Courts may not consider documents on a motion to dismiss where "there is a dispute 'regarding the authenticity or accuracy of the document.'" *Id.* at *8-9 (quoting *Deluca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)). While courts may take judicial notice of the status of other lawsuits and the papers filed therein, they do not do so "for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Actava TV, Inc. v. Joint Stock Co. "Channel One Russ. Worldwide"*, No. 18-cv-06626 (ALC), 2023 U.S. Dist. LEXIS 43933, at *8-9 (S.D.N.Y. Mar. 15, 2023).

## IV.    ARGUMENT

### A.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims

Plaintiff relies on diversity jurisdiction to bring his state law claims before this Court. Compl. ¶ 10 (stating that this Court has jurisdiction pursuant to 28 U.S.C. § 1332). However, Plaintiff fails to plead facts that show damages over $75,000. *See Ventura v. Toledo*, 24-cv-5618 (JMF), 2024 U.S. Dist. LEXIS 138458, at *2-3 (S.D.N.Y. July 30, 2024) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273-74 (2d Cir. 1994)) (finding that a federal court may not exercise diversity jurisdiction no party clearly alleges the jurisdictional amount). Therefore, Defendant AMP respectfully requests that this Court dismiss Plaintiff's claims due to lack of subject matter jurisdiction.

A plaintiff asserting federal court jurisdiction bears the burden to "demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied." *Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 U.S. App. LEXIS 2011, at \*5 (2d Cir. Jan. 26, 2023); *see also Lupo v. Human Affairs Int'l*, 28 F.3d 269, 273 (2d Cir. 1994). General, conclusory statements do not suffice to meet that burden. *Agoliati*, 2023 U.S. App. LEXIS 2011, at \*5 (an allegation that "the amount in dispute exceeds $75,000" is, on its face, insufficient). Instead, a plaintiff "must allege in his pleading the facts essential to show jurisdiction." *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). That federal courts are courts of limited jurisdiction is so essential that any party or the court may raise the lack of subject matter jurisdiction at any point in the case; therefore, a party "must carry throughout the litigation the burden of showing that he is properly in court." *Id.*

Plaintiff's allegations plainly fail to meet his burden to demonstrate this Court's jurisdiction. Rather than plead specific facts, Plaintiff asserts only that "the amount of controversy exceeds $75,000." *Compare* Compl. at ¶ 10 *with Agoliati*, 2023 U.S. App. LEXIS 2011, at \*5. As to his injuries, Plaintiff pleads no more than "bruises and wounds" and unspecified injury to his arm and shoulder, necessitating physical therapy—damages that, by Plaintiff's own pleadings, are more appropriately attributable to conduct he alleges by non-party police officers. Compl. ¶¶ 232, 234. He further alleges non-specific "extensive physical, mental, and monetary damages." *Id.* ¶ 346. This statement fails to establish that Plaintiff "could recover damages in excess of the $75,000 statutory minimum." *Scott v. Doordash*, No. 24-CV-1783 (LTS), 2024 U.S. Dist. LEXIS 198015, at \*5 (S.D.N.Y. Oct. 28, 2024) (dismissing a complaint alleging $150,000 in damages because the plaintiff did not plead facts to show she could recover that amount). At no point in his Complaint does Plaintiff allege a specific amount of damages or present any underlying support for his alleged

damages. *See generally* Complaint at 200 (praying for relief of "compensatory, consequential, and punitive damages in amounts to be determined at trial"); *see also Kirk v. Citigroup Glob. Mkt. Holdings*, No. 20-cv-07619 (ALC), 2023 U.S. Dist. LEXIS 231038, at *3 (S.D.N.Y. Dec. 28, 2023) (concluding that a large multiplier for punitive damages cannot always save diversity jurisdiction where the actual harm falls below the required amount-in-controversy). Because Plaintiff fails to support his invocation of federal diversity jurisdiction, this Court must dismiss his claims in full.

## B.    This Court Lacks Personal Jurisdiction Over AMP

This Court possesses no basis to exercise personal jurisdiction over AMP. AMP is not subject to general jurisdiction in the state of New York, and Plaintiff fails to plead facts about AMP's contacts with New York that could establish specific jurisdiction. Therefore, exercise of jurisdiction by this Court would violate due process requirements. *See Kee v. Det. Lions, Inc.*, No. 24-cv-223 (ALC), 2025 U.S. Dist. LEXIS 59545, at *7 (S.D.N.Y. Mar. 30, 2025) (determining that due process requires a corporation's contacts with the forum state to be so continuous and systematic that it is essentially at home).

Once a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Network Presentations*, 2025 U.S. Dist. LEXIS 61548, at *8. Courts review the pleadings and any affidavits to determine whether jurisdiction exists, taking only uncontroverted facts as true. *Id.* at *9 (citing *Atl. Mut. Ins. Co.*, 968 F.2d at 198). New York's long-arm jurisdictional statute allows jurisdiction to the extent consistent with due process.  *Id.* at *8. Constitutional due process requires that plaintiffs establish how each defendant has "minimum contacts" with the forum state "such that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

Courts in New York exercise either "general jurisdiction pursuant to N.Y. CPRL § 301 . . . or specific jurisdiction pursuant to N.Y. CPRL § 302." *Network Presentations*, 2025 U.S. Dist. LEXIS 61548, at *8-9 (citing *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011)). New York law permits the exercise of general jurisdiction over a non-domiciled defendant where "the defendant is engaged in such a continuous and systematic course of doing business . . . as to warrant a finding of its presence in this jurisdiction." *Id.*, at *12 (citing *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015)). For corporations, general jurisdiction exists where the corporation is "domiciled in New York, served with process in New York, or continuously and systematically do[es] business in New York." *Id.* To determine whether specific jurisdiction exists, New York courts review whether the defendant has one of four forms of contact-    "(1) transacting business within the state; (2) committing a tortious act within the state; (3) committing a tortious act outside the state that causes injury to person within the state, provided certain conditions are met, or (4) owning, using, or possessing real property within the state." *Id.*, at *14.

AMP is incorporated in California and maintains its principal place of business in Virginia. Compl. ¶ 10. Additionally, Plaintiff served AMP with process at its place of business in Virginia. ECF No. 16. Therefore, this Court need only determine whether AMP "continuously and systematically do[es] business in New York." *Network Presentations*, 2025 U.S. Dist. LEXIS 61548, at *13. Plaintiff fails to plead any facts that justify the exercise of general jurisdiction over AMP in this case. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014) (holding that a "corporation that operates in many places can scarcely be deemed at home in all of them"); *Shovah*

*v. Roman Catholic Diocese of Alb.* (*In re Roman Catholic Diocese of Alb.*), 745 F.3d 30, 39 (2d Cir. 2014) (explaining how courts should only extend general jurisdiction should only be extended beyond a corporation's domicile in the "exceptional case"). Plaintiff further does not plead any facts to support specific jurisdiction. He does not plead that AMP transacts any business in New York, committed any torts in New York, or owns any property in New York. *GH Am. Energy*, 2025 U.S. Dist. LEXIS 55668, at *8 (asserting that a plaintiff must include specific facts that establish personal jurisdiction). Therefore, Plaintiff cannot establish that his claim arises from AMP's business in New York as required for exercise of specific personal jurisdiction. *Network Presentations*, 2025 U.S. Dist. LEXIS 61548, at *15. As this Court does not have personal jurisdiction over AMP, this court therefore cannot consider Plaintiff's claims.

**C.    Plaintiff Fails to State a Claim for Aiding and Abetting Assault and Battery**

Notwithstanding the jurisdictional infirmities, Plaintiff also fails to state a claim for aiding and abetting assault and battery under New York State law. Deep within Plaintiff's 201-page Complaint—which first requires a dizzying, irrelevant journey to college campuses around the country—is a threadbare and meritless allegation that AMP aided and abetted the assault and battery of Plaintiff on a CCNY campus on April 26, 2024 without pointing to a single action taken by AMP to do so. Plaintiff's allegations fail to state a claim against AMP, and Plaintiff's first claim should be dismissed.

In New York, a cause of action for aiding and abetting an assault and battery requires that the Plaintiff sufficiently allege "(1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 691 (S.D.N.Y. 2011). A Plaintiff must allege an "overt

act" and "directly link" a defendant to the assault. *Shea v. Cornell Univ.*, 192 A.D.2d 857, 858 (3d Dep't 1993).

Plaintiff fails to allege the elements of his claim. Even attempting to construe the facts in Plaintiff's favor, his allegation can be summarized as follows: a mob of unidentified people allegedly attacked Plaintiff at a student protest encampment on the CCNY campus in Harlem, the student protest encampment was allegedly sponsored by NSJP, and NSJP was allegedly operating on behalf of AMP in creating the CCNY encampment. Compl. ¶ 235. Plaintiff does not allege that members of AMP assaulted him or that AMP directed members of the mob to assault him. Plaintiff does not specify whether the members of the mob were students at the encampment, passersby, or others. In fact, Plaintiff appears to have no information at all about the identity of the assailants. Plaintiff fails to make any connection between AMP, a national nonprofit based in Virginia, and the individuals involved in the alleged assault at CCNY in New York City. Plaintiff does not allege that AMP knew of his identity or his presence on the CCNY campus on April 26, 2024.

Further fatal to his claim, Plaintiff alleges no overt act taken by AMP connected with the alleged assault and battery, much less that AMP provided knowing assistance to the assault. *Doe 7015 v. Elektra Ent. Grp. Inc.*, No. 21 CIV. 6868 (JPC), 2023 WL 2744102, at *4 (S.D.N.Y. Mar. 31, 2023) (dismissing aiding and abetting claim because Plaintiff failed to allege Defendant's substantial assistance to underlying tort through "some overt act or that they knew or intended that their conduct would do so"); *Lindsay v. Lockwood*, 625 N.Y.S.2d 393 (Monroe Co. Sup. Ct. 1994). Plaintiff has not shown that AMP engaged in any "act[s] of encouragement" to the assailants to assault the Plaintiff. *Id*. Plaintiff has not even alleged that members of AMP were present at the time of the assault—though even presence has been deemed insufficient to sustain a claim of aiding and abetting. *Lindsay*, 625 N.Y. at 393.

Given that Plaintiff has failed to demonstrate the bare minimum of conduct required to plead a claim of aiding and abetting, including a failure to allege AMP's knowledge of or substantial assistance in the unknown assailants' assault on him, his claim against AMP must fail.

### D.    Plaintiff Fails to State a Claim for Civil Conspiracy to Commit Assault and Battery

Plaintiff's second claim must fail because Plaintiff has failed to allege the bare minimum elements of civil conspiracy against AMP. As the New York Court of Appeals first held in 1889 and reiterated in 1891, 1986, and 2017 "a mere conspiracy to commit a [tort] is never of itself a cause of action." *Alexander & Alexander, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986); *Brackett v. Griswold*, 112 N.Y. 454, 467 (1889); *accord, Green v Davies*, 182 NY 499 (1905); *Manning v. Beck*, 129 N.Y. 1, 11 (1891); *Carlson v. Am. Int'l Grp., Inc*., 30 N.Y.3d 288, 310 (2017) ("New York does not recognize a freestanding claim for conspiracy"). Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort. *Alexander*, 68 N.Y.2d at 969.

To succeed, a "plaintiff may plead the existence of a conspiracy . . . to demonstrate that each defendant's conduct was part of a common scheme." *World Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532–533 (S.D.N.Y. 2001) (citation omitted). To establish a claim of civil conspiracy, a plaintiff must allege "the underlying tort, *plus* the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Id.* (emphasis added).

The Complaint does not actually allege that AMP conspired to commit assault and battery, but rather alleges that AMP conspired to "commit tortious and unlawful acts to disrupt the CCNY

and Columbia college campuses." Compl.¶ 353. Without properly alleging an underlying tort that the defendant conspired in, a claim for conspiracy must be dismissed. *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (quoting *Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002) ("Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy . . . are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."); *see also Alexander*, 68 N.Y.2d at 969; *Sharp v. Ferrante Law Firm*, 220 A.D.3d 587, 588 (1st Dep't 2023).

Further, the Complaint offers no specific facts demonstrating how or when AMP allegedly entered into an agreement with the assailants, the nature of any communication or meeting of the minds between AMP and the assailants regarding the assault and/or battery, or *any* specific actions taken by AMP to further the alleged assault, beyond the mere fact of the assault and/or battery itself. Plaintiff has failed to plead the "time, facts, and circumstances" regarding how the conspiracy began. *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 475 (S.D.N.Y. 2019). In fact, Plaintiff cannot allege how the conspiracy began because Plaintiff does not appear to be aware of the identities of the assailants, which Plaintiff describes only as a "mob." The claim for civil conspiracy must fail.

Plaintiff has also failed to plead any overt act by AMP in furtherance of the alleged agreement. Just as the aiding and abetting claim should be dismissed for Plaintiff's failure to plead any overt act by AMP in support of the assault, the conspiracy claim should be dismissed. *Id.* at 476 ("For the same reasons the substantial assistance or knowledge element is not adequately pled against a particular defendant, the 'intentional participation in furtherance of a plan' element would also often fail.").

The civil conspiracy claim should additionally be dismissed as duplicative of the aiding and abetting claim, both of which are premised on the same conduct and seek the same relief. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 475 (S.D.N.Y. 2019) (dismissing civil conspiracy claims because they "are largely duplicative of the aiding and abetting claims"); *Loreley Fin. (Jersey) No 3 Ltd. v. Wells Fargo Sec., LLC*, 12-cv-3723 (RJS), 2016 WL 5719749, at *8 (S.D.N.Y. Sept. 29, 2016) ("In cases in which Plaintiffs' aiding and abetting claims overlap with their conspiracy claims, New York courts . . . have dismissed as duplicative the conspiracy claims."). Plaintiff fails to plead sufficient facts to allege civil conspiracy, and premised his claim on the same conduct and relief as the aiding and abetting claim. Plaintiff's Second Claim also fails.

**E.     AMP's Actions Merit First Amendment Protection**

Plaintiff, in reality, makes allegations that would have the effect of suppressing AMP's protected speech and association, violating AMP's rights under the First Amendment. The Supreme Court determined that even offensive speech and conduct cannot give rise to tort claims, where a claim cites speech alone on "matters of public import." *Snyder v. Phelps*, 562 U.S. 443, 456 (2011). Even speech that includes intimidation, coercion, and threats of boycotts maintains First Amendment protections. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982). At the heart of the claims, Plaintiff is ironically attempting to hold AMP liable for speech by AMP that he disagrees with; nothing more. Disagreeable speech does not lose the protection of the First Amendment; in fact, constitutional protections become even more important in that context. Plaintiff cannot hold AMP liable for mere speech, under any claim, without trampling the inherent meaning of the First Amendment.

**F.     AMP is Entitled to Fees and Costs Under New York's Anti-SLAPP Law**

A lawsuit attempting to punish a non-profit for advocating on behalf of Palestinian rights is the quintessential example of a "strategic lawsuit against public participation" ("SLAPP"), designed to chill free speech on issues of public importance.[7] New York's Anti-SLAPP law "provide[s] breathing space for free speech on contentious public issues" and "decrease[s] the 'chilling effect' of certain kinds of . . . speech-restrictive litigation" by mandating that defendants be awarded costs and attorney's fees upon demonstrating that an action involving public participation was commenced "without a substantial basis in fact and law." *Heilbut v. Cassava Scies., Inc*., No. 24-cv-05948 (JLR), 2025 U.S. Dist. LEXIS 56283, 2025 WL 919654, at *6 (S.D.N.Y. Mar. 26, 2025*)* (quoting N.Y. Civ. Rights Law § 70-a(1)). Plaintiffs are additionally entitled to recover compensatory damages upon a demonstration that the action was commenced "for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition, or association rights." N.Y. Civ. Rights Law § 70-a(1). AMP is entitled to fees and damages here.

Federal courts presented with a claim under New York's Anti-SLAPP law apply the substantive provisions of the state law and follow the procedural provisions of the Federal Rules of Civil Procedure. *Watson v. NY Doe 1*, No. 19-CV-533 (JGK), 2023 WL 6540662, at *5 (S.D.N.Y. Oct. 6, 2023). The "Second Circuit has consistently held that provisions for attorney's fees are a substantive, not procedural, right." *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 183 (S.D.N.Y. 2024), *appeal withdrawn,* No. 25-17, 2025 WL 1009663 (2d Cir. Mar. 31, 2025) (awarding costs and fees based on New York Anti-SLAPP law); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), *certified question answered,* 133 Nev. 512, 402 P.3d 665 (2017) (awarding fees based on similar provision in Nevada's anti-SLAPP statute); *Cotton v. Slone,* 4 F.3d 176, 180

---

[7] AMP intends to timely file a separate motion for sanctions as well.

(2d Cir.1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity.").

Upon a finding that a lawsuit fails to state a claim, the fee-award provision of the Anti-SLAPP law is automatically triggered. *Bobulinski*, 758 F. Supp. 3d at 185 ("New York State appellate courts, interpreting the anti-SLAPP law, have held—repeatedly—that substantive standard for fees is automatically met by a SLAPP suit's failure to state a claim."). This case is an action involving public participation, as defined by N.Y. Civ. Rights Law § 76-a(1)(a). Nearly all allegations against AMP by Plaintiff relate to statements made by AMP affiliates on matters of public interest. For example, Plaintiff alleges that AMP's New Jersey chapter encouraged its supporters to provide "jail support" for individuals arrested from Columbia University. Compl. ¶ 252. Plaintiff also cites posts by AMP's chapter in Connecticut that purportedly show acts that took place on Yale University's campus. *Id*. ¶¶ 305, 334, 338. On page 152 of his Complaint, Plaintiff provides a screenshot purporting to be from the social media account of AJP Action, AMP's separately incorporated 501(c)(4) affiliate which is not a party in this action. The post decries the NYPD's violent tactics used in arresting students from Columbia University. Plaintiff characterizes another post by AJP Action bringing attention to the NYPD's aggressive tactics. *Id.* ¶ 269. Plaintiff also cites to a speech that the Executive Director of AMP gave at the Columbia encampment. *Id.* ¶ 189.

As demonstrated above, Plaintiff fails to state a claim against AMP, therefore the award of fees is mandatory. *See* Civ. Rights Law § 70-a(1)(a). Additionally, given the lack of connection between AMP's statements and the claims asserted by Plaintiff and the fallacious conflation between AMP and NSJP, it is apparent that Plaintiff commenced this lawsuit to harass, intimidate,

punish, or otherwise maliciously inhibit the free exercise of AMP's right to speech and association. As such, AMP is entitled to costs, fees, and compensatory damages.

## V.    CONCLUSION

Plaintiff fails to plead facts that, if true, could sufficiently establish this Court's subject matter jurisdiction over his claims, or its personal jurisdiction over AMP. Even if this Court determines it does have jurisdiction over this matter, Plaintiff still fails to plead facts to sufficiently state the claims he alleges against AMP. AMP operates wholly in the United States, remains in good standing with the U.S. government, and transparently discloses its mission and goals. Plaintiff cannot rely on his own conclusory statements and irrational assumptions to compensate for his legal and factual failures. Therefore, AMP respectfully asks this Court to dismiss Plaintiff's claims against AMP with prejudice[8] pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(2), and Fed. R. Civ. P. 12(b)(6).

---

[8] Pursuant to the Court's Individual Rule of Practice 2(D)(ii), Plaintiff did not inform the Court or Defendants that they intended on amending; therefore, the Court should not grant Plaintiff leave to Amend.

DATED:    August 22, 2025

        New York, NY

                              Respectfully Submitted,

                              BELDOCK LEVINE & HOFFMAN LLP

By:                          
                            Luna Droubi
99 Park Ave., PH/26th Floor
New York, NY 10016
Tel: (212) 277-5875
Fax: (212) 277-5880

Christina A. Jump
(*pro hac vice* application forthcoming)
Samira S. Elhosary
(*pro hac vice* application forthcoming)
Constitutional Law Center
for Muslims in America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
selhosary@clcma.org

COUNSEL FOR DEFENDANT
AJP EDUCATIONAL FOUNDATION, INC. a/k/a
AMERICAN MUSLIMS FOR PALESTINE

*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of August, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:  _____

Luna Droubi