UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
: 
AMI HOROWITZ                                                :
                                                           :
                    Plaintiff,                             :
                                                           :
v.                                                         :        Civil Case No. 1:25-cv-3412 (ALC)
                                                           :
AJP EDUCATIONAL FOUNDATION,                                :
INC. d/b/a AMERICAN                                        :
MUSLIMS FOR PALESTINE and                                  :
NATIONAL STUDENTS FOR JUSTICE                              :
IN PALESTINE,                                              :
                                                           :
                    Defendants.                            :
                                                           :
-------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AJP
EDUCATIONAL FOUNDATION INC. d/b/a AMERICAN MUSLIMS FOR
PALESTINE'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 4

   I.   AMP disregards the pleading standard by disputing Plaintiff's factual allegations and ignores key allegations in Plaintiff's Complaint. ......................................... 4

  II.   Plaintiff has sufficiently alleged that the amount-in-controversy is met for diversity jurisdiction. ............................................................................................. 6

 III.   Plaintiff has sufficiently alleged that AMP is subject to the Court's specific jurisdiction. ................................................................................................................ 8

 IV.  Plaintiff has sufficiently alleged that AMP is liable for aiding and abetting the assault and battery against him by systemically assisting the violent and unlawful CUNY Encampment and its protestors. ................................................................ 10

       A.   Under the Supreme Court's decision in *Twitter*, a defendant who systemically assists a wrongful enterprise is liable for aiding and abetting the foreseeable tortious acts of that enterprise. ................................................. 11

       B.   AMP's arguments to dismiss Plaintiff's aiding and abetting claims fail under *Twitter* and *Halberstam*. ........................................................................... 13

  V.   Plaintiff has sufficiently alleged that AMP agreed to a conspiracy that was furthered by a co-conspirator's assault and battery against him. .......................... 15

       A.   Plaintiff has sufficiently pled that AMP's co-conspirators attacked him as an overt act furthering a shared conspiracy. ................................................. 15

       B.   Plaintiff has met the requirement for alleging AMP's agreement to a conspiracy at the pleading stage. ........................................................... 17

       C.   Plaintiff's conspiracy claim is not duplicative of his aiding and abetting claim. ...................................................................................................... 18

 VI.  The First Amendment does not insulate AMP from liability for Plaintiff's claims. ........ 20

VII.  AMP is not entitled to recover fees, costs, or damages under New York's anti-SLAPP law. ............................................................................................................ 22

       A.   New York's anti-SLAPP law does not apply in a federal proceeding. .................... 22

       B.   AMP cannot recover under New York's anti-SLAPP because it has not complied with its procedural requirements. ............................................... 23

       C.   AMP has not borne its burden for demonstrating its entitlement to fees, costs, and damages under New York's anti-SLAPP. .............................................. 24

CONCLUSION .................................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,*
    404 F.3d 566 (2d Cir.2005)................................................................ 19

*Bangladesh Bank v. Rizal Com. Banking Corp.,*
    208 N.Y.S.3d 2 (2024)..................................................................... 8

*Bobulinski v. Tarlov,*
    758 F.Supp. 3d 166 (S.D.N.Y. 2024).............................................. 24

*Camp v. Dema,*
    948 F.2d 455 (8th Cir. 1991) ......................................................... 12

*Carroll v. Trump,*
    590 F. Supp. 3d 575 (S.D.N.Y. 2022).......................................... 22, 23

*CDC Newburgh Inc. v. STM Bags, LLC,*
    692 F. Supp. 3d 205 (S.D.N.Y. 2023).......................................... 22, 23

*Charles Schwab Corp. v. Bank of Am. Corp.,*
    883 F.3d 68 (2d Cir. 2018)............................................................... 8

*Chase Manhattan Bank, N.A. v. Aldridge,*
    906 F. Supp. 870 (S.D.N.Y. 1995) ................................................. 7

*Co. v. Onyema,*
    No. 24-CV-5287 (PKC) (JAM),
    2025 WL 1891967 (E.D.N.Y. July 9, 2025)................................... 7

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
    187 F.3d 229 (2d Cir. 1999)........................................................... 17

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.,*
    551 F. Supp. 3d 320 (S.D.N.Y. 2021)............................................ 23

*Daleiden v. Planned Parenthood Fed'n of Am.,*
    No. 21-2068-CV,
    2022 WL 1013982 (2d Cir. Apr. 5, 2022) ..................................... 23

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,*
    755 F.2d 239 (2d Cir.1985)............................................................ 19

*Editor's Pick Luxury LLC v. Red Points Sols. SL,*
    No. 1:22-CV-07463 (ALC),
    2023 WL 6385993 (S.D.N.Y. Sept. 29, 2023).............................. 22, 23

*Fairfield Fin. Mortg. Grp., Inc. v. Luca,*
    584 F. Supp. 2d 479 (E.D.N.Y. 2008) ........................................... 6

*Financial Guar. Ins. Co. v. Putnam Advisory Co.,*
    783 F.3d 395 (2d Cir. 2015).................................................... 4, 14, 27

*Freedom Mortg. Corp. v. Platinum Home Mortg. Corp.*,
No. 1:11-CV-1357 GTS/DRH,
2012 WL 3989330 (N.D.N.Y. Sept. 11, 2012) ................................................... 9

*Freeman v. HSBC Holdings PLC*,
57 F.4th 66 (2d Cir.),
*cert. denied*, 144 S. Ct. 83, 217 L. Ed. 2d 17 (2023) ................................... 16, 19

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949).......................................................................... 20, 26

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ...................................................... 10, 11, 15, 16

*Heilbut v. Cassava Scis., Inc.*,
778 F.Supp. 3d 551 (S.D.N.Y. 2025)..................................................... 24

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
175 F. Supp. 2d 593 (S.D.N.Y. 2001)..................................................... 18

*Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.*,
968 F.2d 286 (2d Cir.1992).................................................................. 21

*Kaminski v. Polish & Slavic Fed. Credit Union*,
No. 06 CV 688 ARRLB,
2007 WL 2343673 (E.D.N.Y. Aug. 13, 2007)......................................... 7

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007)................................................................. 4

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020)................................................................ 22

*Lindell v. Mail Media Inc.*,
575 F. Supp. 3d 479 (S.D.N.Y. 2021).................................................. 23

*Lindsay v. Lockwood*,
625 N.Y.S.2d 393 (Sup. Ct. 1994)...................................................... 15

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008).............................................................. 7

*N. A. A. C. P. v. Claiborne Hardware Co.*,
458 U.S. 886 (1982)........................................................................ 21

*Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design*, Inc.,
551 F. Supp. 3d 408 (S.D.N.Y. 2021).................................................. 22

*New York v. Arm or Ally, LLC*,
718 F. Supp. 3d 310 (S.D.N.Y. 2024),
*motion to certify appeal granted*, No. 22-CV-6124 (JMF),
2024 WL 2270351 (S.D.N.Y. May 20, 2024) ........................................ 7

*Palin v. New York Times Co.*,
510 F. Supp. 3d 21 (S.D.N.Y. 2020)................................................... 23

*Pilates, Inc. v. Pilates Inst., Inc.*,
    891 F. Supp. 175 (S.D.N.Y. 1995) ...................................................................... 8

*Press v. Primavera*,
    685 F. Supp. 3d 216 (S.D.N.Y. 2023) ................................................................. 5

*Prince v. Intercept*,
    No. 21-CV-10075,
    2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022) ................................................. 22, 23

*Ray v. Weit*,
    708 F. App'x 719 (2d Cir. 2017) ........................................................... 4, 14, 27

*Scherer v. Equitable Life Assurance Soc'y of U.S.*,
    347 F.3d 394 (2d Cir. 2003) .............................................................................. 6, 8

*Schwab v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 992 (E.D.N.Y. 2006) .................................................................. 7

*Schwartz v. Hitrons Sols., Inc.*,
    397 F. Supp. 3d 357 (S.D.N.Y. 2019) .............................................................. 6, 8

*Tongkook Am., Inc. v. Shipton Sportswear Co.*,
    14 F.3d 781 (2d Cir. 1994) .................................................................................. 7

*Twitter v. Taamneh*,
    598 U.S. 471 (2023) ........................................................ 3, 10, 11, 12, 13, 19

*United States v. Bicaksiz*,
    194 F.3d 390 (2d Cir. 1999) .............................................................................. 16

*United States v. Labat*,
    905 F.2d 18 (2d Cir. 1990) ................................................................................ 16

*United States v. Rooney*,
    866 F.2d 28 (2d Cir. 1989) ................................................................................ 16

*United States v. Rowlee*,
    899 F.2d 1275 (2d Cir.1990) ....................................................................... 21, 26

**Statutes**

C.P.L.R. § 302(a)(2) .......................................................................................... 8

N.Y. Civ. Rights Law § 70-a ................................................................. 23, 24, 26

N.Y. Civ. Rights Law § 70-a(1) ......................................................................... 26

N.Y. Civ. Rights Law § 76-a ............................................................................. 25

Plaintiff opposes Defendant AJP Educational Foundation Inc. d/b/a American Muslims for Palestine's ("AMP") motion to dismiss, which should be denied for the reasons explained fully below.

## INTRODUCTION

This is not a case about free expression or opinions on current events or political advocacy on public issues. This is a case about holding accountable two organizations that systemically organized and supported <u>unlawful and violent acts</u> on a college campus that resulted in a mass assault against Plaintiff Ami Horowitz in April 2024. Defendants AMP and National Students for Justice in Palestine ("NSJP")—which AMP created and operates—assisted and conspired with NSJP's CUNY and Columbia chapters to create an unlawful encampment at the City College of New York's ("CCNY") campus in April 2024 (the "CUNY Encampment"). The CUNY Encampment was created to pressure the City University of New York's ("CUNY") administration into submitting to AMP and NSJP's demands. The encampment was violently established and defended by the NSJP chapters and their allies, who targeted those they perceived as threats to the encampment's mission. This included Plaintiff, whom they attacked when he simply walked near the encampment holding an American flag.

For their role organizing and supporting the CUNY and Columbia NSJP chapters and the CUNY Encampment in their violent activities, Plaintiff brings claims against AMP and NSJP for aiding and abetting the assault and battery he suffered. For their agreement to a common plan with the CUNY and Columbia NSJP chapters to create and use the CUNY Encampment to violently force CUNY's submission to their demands, which the NSJP chapters attacked Plaintiff to further, Plaintiff brings a claim against AMP and NSJP for conspiracy.

1

AMP's Motion to Dismiss (the "Motion") seeks to dismiss Plaintiff's Complaint based on arguments about the Court's lack of jurisdiction, the insufficiency of Plaintiff's claims, and the First Amendment. AMP requests fees under New York's anti-SLAPP law. AMP disregards pleading standards by disputing facts alleged in the Complaint and ignores key allegations, including Plaintiff's detailed descriptions of AMP's assistance to and support for wrongful and violent conduct related to the CUNY Encampment that went far beyond mere speech on political issues.

Each of AMP's arguments fails based on misstatements of law or mischaracterizations of Plaintiff's allegations.

First, AMP's argument that Plaintiff has not sufficiently alleged that his claims meet the amount-in-controversy for diversity jurisdiction fails because the pleading standard for meeting the amount-in-controversy is low. Plaintiff enjoys a presumption that his Complaint is a good-faith representation that the amount-in-controversy is met, and his claims against AMP and NSJP for damages based on their intentional wrongful conduct related to the attack are aggregable and demonstrate a "reasonable probability" that his claims satisfy the amount-in-controversy requirement.

Second, AMP's argument that Plaintiff has not sufficiently alleged that the Court has specific jurisdiction over AMP fails because the Court has jurisdiction based on Plaintiff's allegation that AMP committed and conspired in tortious acts in New York. AMP's only argument against the Court's jurisdiction is a conclusory assertion that Plaintiff has not alleged that AMP committed a tort in New York—which is directly contradicted by the allegations in the Complaint.

Third, AMP's argument that Plaintiff has not sufficiently alleged AMP's liability for aiding and abetting the assault and battery against Plaintiff fails because AMP ignores the Supreme

Court's opinion in *Twitter v. Taamneh*, 598 U.S. 471 (2023) and the well-established principle that a defendant can be liable for aiding and abetting the foreseeable wrongdoing of an unlawful enterprise he has systemically supported. AMP disputes its liability based only on Plaintiff not alleging AMP's direct knowledge of and participation in the attack. This does not defeat AMP's liability based on Plaintiff's allegations that AMP directed and supported the NSJP chapters that unlawfully and violently created the CUNY Encampment, which foreseeably led to the attack against Plaintiff.

Fourth, AMP's argument that Plaintiff has not sufficiently alleged its liability for civil conspiracy based on the attack fails because AMP misstates the standard for civil conspiracy liability. AMP argues that it cannot be liable because Plaintiff has not alleged that AMP conspired to commit the attack against Plaintiff specifically or that AMP itself took an overt act related to the attack. These arguments are unavailing because a defendant is liable for the wrongful acts of its co-conspirators so long as the act was done to further the conspiracy. Plaintiff sufficiently alleges that AMP agreed to a conspiracy with the CUNY and Columbia NSJP chapters to unlawfully establish the CUNY Encampment and coerce CUNY's administration, and that the attack on Plaintiff was done to further that plan.

Fifth, AMP's argument that Plaintiff's claims are based on protected First Amendment activity fails legally and factually. AMP falsely states that Plaintiff's claims are based solely on its expressive conduct—which is directly contradicted by Plaintiff's allegations of AMP's non-speech conduct to support the violent and unlawful CUNY Encampment and the protestors who attacked Plaintiff. AMP's argument that any expressive conduct related to supporting the CUNY Encampment and the attack against Plaintiff is protected speech fails because expressive conduct that is integral to criminal or tortious wrongdoing is not protected under the First Amendment.

Sixth, AMP's argument that it is entitled to recover fees under New York's anti-SLAPP law if his claims are dismissed fails for several reasons: 1) courts consistently hold that the anti-SLAPP law, including its fees provision, does not apply in federal court; 2) the anti-SLAPP law requires an affirmative claim to recover fees and damages; and 3) AMP fails to demonstrate that Plaintiff's claims are covered by the anti-SLAPP law and that they have no substantial basis in law and fact.

## **ARGUMENT**

### I.  **AMP disregards the pleading standard by disputing Plaintiff's factual allegations and ignores key allegations in Plaintiff's Complaint.**

"In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to accept as true all facts alleged in the complaint." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) (citation omitted). "The court is to draw all reasonable inferences in favor of the plaintiff. *Id*. (citation omitted). A defendant's dispute of facts alleged in a complaint cannot be resolved on a motion to dismiss under Rule 12(b)(6). *See Ray v. Weit*, 708 F. App'x 719, 722 (2d Cir. 2017); *Financial Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 405 (2d Cir. 2015).

AMP spends a considerable portion of its Motion to Dismiss contesting Plaintiff's allegations. AMP disputes Plaintiff's allegations that AMP created NSJP and uses it as a tool for organizing and directing campus groups, asserting that it has no relationship with NSJP. ECF No. 23 at 2-3; *see* Compl. ¶¶ 4, 15, 34-36. AMP contests the accuracy of Plaintiff's allegations that AMP and NSJP collaborated with Hamas related to its October 7, 2023, terror attack, that AMP encouraged and directed violence on campuses, that AMP was involved in the creation and dissemination of "toolkits" for violent and disruptive activism, and that AMP developed and

executed the nationwide plan for protest encampments. ECF No. 23 at 3-4. None of AMP's factual claims are appropriate to consider on a 12(b)(6) motion.

AMP may not use its Rule 7.1 corporate disclosure statement to dispute allegations like its relationship with NSJP on a motion to dismiss. A court may only consider "'facts stated on the face of the complaint,'" "'documents appended to the complaint or incorporated in the complaint by reference,' 'matters of which judicial notice may be taken,' and documents 'integral' to the complaint. *Press v. Primavera*, 685 F. Supp. 3d 216, 223 (S.D.N.Y. 2023) (citation omitted). AMP does not establish that the disclosure statement is any of these. To the extent AMP would have the Court take judicial notice of the disclosure statement, it may only be of its existence and not "for the truth of the matter asserted" within it, as AMP acknowledges. *Id*. at 224; ECF No. 23 at 9.

AMP's factual claims rely upon mischaracterizations of the Complaint that ignore key allegations. AMP's claim that Plaintiff has not alleged that AMP and NSJP collaborated with Hamas is contradicted by Plaintiff's allegations demonstrating AMP and NSJP's advance awareness of an attack on October 7, 2023, and readiness to engage in propaganda and activism in support of Hamas in the attack's immediate aftermath. Compl. ¶¶ 63-91. AMP's claim that AMP had no involvement with the "toolkits," the encampment operation, or protests by NSJP's chapters and affiliates is contradicted by Plaintiff's allegation that AMP created and runs NSJP as an organizing tool, which in turn is supported by Plaintiff's allegations of AMP's role in creating NSJP, the overlap in their activities and leadership, and NSJP's lack of independent legal or organizational existence. *Id*. ¶¶ 4, 15, 34-36, 56-87.

Finally, AMP mischaracterizes several allegations about the attack itself. AMP claims that Plaintiff "conceded that he was on the [CCNY] campus illegally" because he alleges he was taken away from the scene of the assault by the NYPD after it occurred. ECF No. 23 at 4-5; *see* Compl.

¶ 232. Plaintiff's Complaint concedes no such thing and only reflects how law enforcement interdicted in the assault. AMP also claims that Plaintiff placed blame for his injuries on the officers who took him away from the scene of the attack in an arm-lock. ECF No. 23 at 5; *see* Compl. ¶ 232. Here too, Plaintiff makes no such allegation and has not attributed any of his injuries to law enforcement.

## II. Plaintiff has sufficiently alleged that the amount-in-controversy is met for diversity jurisdiction.

AMP argues that Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction because he has not sufficiently alleged that the amount in dispute exceeds $75,000. ECF No. 23 at 9-11. AMP's arguments fail because the bar for alleging that the amount-in-controversy is met is low and satisfied by Plaintiff's allegations concerning damages AMP is liable for. As AMP acknowledges, Plaintiff need only show that there is a "reasonable probability" that his claims meet the amount-in--controversy requirement. ECF No. 23 at 10; *see also Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364–65 (S.D.N.Y. 2019). "The "reasonable probability" burden is minimal at the pleading stage because "a rebuttable presumption [exists] that the face of the complaint is a good faith representation of the actual amount in controversy[.]" *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).

This presumption exists where the plaintiff alleges facts "plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Schwartz*, 397 F. Supp. 3d at 364-65 (citation omitted). A plaintiff's punitive damages claims are included in meeting the threshold for the amount in controversy for diversity actions. *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, 584 F. Supp. 2d 479, 484 (E.D.N.Y. 2008). Where defendants share joint liability for their wrongdoing, such as acting "concurrently or in concert to produce a single injury," a plaintiff may aggregate his claims against the defendants to meet the amount in

6

controversy. *See New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310, 342–43 (S.D.N.Y. 2024), *motion to certify appeal granted*, No. 22-CV-6124 (JMF), 2024 WL 2270351 (S.D.N.Y. May 20, 2024); *Co. v. Onyema*, No. 24-CV-5287 (PKC) (JAM), 2025 WL 1891967, at *14 (E.D.N.Y. July 9, 2025); *Chase Manhattan Bank, N.A. v. Aldridge,* 906 F. Supp. 870, 875 (S.D.N.Y. 1995); *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1036-37, 1273-74 (E.D.N.Y. 2006), *rev'd on other grounds McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008).

Where a plaintiff's damages amount is uncertain—such as for punitive or emotional damages—the "doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994). In *Kaminski v. Polish & Slavic Fed. Credit Union*, No. 06 CV 688 ARRLB, 2007 WL 2343673, at *5 (E.D.N.Y. Aug. 13, 2007), the district court found that a plaintiff had sufficiently pled that her tort claims for an unspecified amount met the $75,001 threshold because she had pled specific harms caused by the defendant and sought punitive damages, and thus "any doubt must be resolved in [the] plaintiff's favor" because "the extent of damages [was] not certain,"

Here, Plaintiff's claim that the amount in controversy is satisfied is supported by his allegations that he was harmed by the assault and battery against him that resulted in personal injury, physical and mental pain and suffering, and attendant costs, and by his claim for punitive damages against both AMP and NSJP for their role in the attack. *See* Compl. ¶¶ 234, 349-50, 355-56, and at 200. Taken together, Plaintiff's good-faith, aggregable claims for compensatory and punitive damages against both Defendants demonstrate a "reasonable probability" of exceeding $75,000. Thus, Plaintiff has sufficiently pled that the amount in controversy is met.

While a defendant can overcome the rebuttable presumption in favor of a plaintiff's allegation that the amount-in-controversy is met, this requires the defendant to "show to 'a legal

certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" *Schwartz*, 397 F. Supp. 3d at 365 (citation omitted). "To overcome the presumption, 'the legal impossibility of recovery must be so certain as virtually to negate the plaintiff's good faith in asserting the claim.'" *Id*. (quoting *Scherer*, 347 F.3d at 397). AMP fails to meet this high standard. AMP offers no argument why there is a "legal certainty" that Plaintiff's claims would not meet the amount-in-controversy based on the harms he suffered and Defendants' culpability for punitive damages due to their wrongful conduct related to the attack.

Plaintiff has thus demonstrated a "reasonable probability" that his claims satisfy the amount-in-controversy and AMP's motion to dismiss based on lack of subject matter jurisdiction should be denied accordingly.

## III.    Plaintiff has sufficiently alleged that AMP is subject to the Court's specific jurisdiction.

AMP argues that that the Court lacks personal jurisdiction over AMP. Under New York's long-arm statute, a defendant is subject to specific jurisdiction if it "commits a tortious act within the state …." C.P.L.R. § 302(a)(2); *see also Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 181-82 (S.D.N.Y. 1995). Where a defendant committed tortious acts by acting through another in New York, such as by aiding and abetting his wrongdoing or by agreeing to a conspiracy that was furthered by an overt act in New York, the defendant is subject to specific jurisdiction in New York. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86-87 (2d Cir. 2018); *Bangladesh Bank v. Rizal Com. Banking Corp.*, 208 N.Y.S.3d 2, 18-19 (2024); *Freedom Mortg. Corp. v. Platinum Home Mortg. Corp.*, No. 1:11-CV-1357 GTS/DRH, 2012 WL 3989330, at *5 (N.D.N.Y. Sept. 11, 2012). In *Freedom Mortg. Corp.*, the district court found that a defendant was subject to the court's specific jurisdiction because the plaintiff had alleged that the defendant committed acts

in New York aiding and abetting an underlying tort and because the tort the defendant aided and abetted took place in New York. No. 1:11-CV-1357 GTS/DRH, 2012 WL 3989330, at *5.

AMP's argument that it is not subject to the Court's specific jurisdiction based on committing tortious conduct withing New York consists of nothing more than a single clause of a single sentence stating that Plaintiff "does not plead that AMP … committed any tortious acts in New York." ECF No. 23 at 13. This conclusory statement is false on its face. Plaintiff alleges that AMP committed the torts of aiding and abetting the assault and battery against him and of participating in a civil conspiracy which the attack furthered. Compl. ¶¶ 345-356. Plaintiff provides detailed allegations of AMP's knowing and substantial support to the wrongdoing that foreseeably led to the attack through organizing, directing, supporting, encouraging, and defending the CUNY Encampment and its violence, and of AMP's agreement to a conspiracy with the NSJP groups that created the encampment and perpetrated the attack. *Id*. This conduct was directed at and took place in New York: AMP assisted wrongdoing that occurred in and was targeted to New York and much of its assistance—such as providing resources and organization—took place in New York; and the conspiracy it agreed to was targeted to New York and furthered by attack against Plaintiff in New York. *Id*.

Plaintiff has thus sufficiently pled that AMP is subject to the Court's specific jurisdiction based on committing tortious conduct in New York and as a co-conspirator of tortious conduct that occurred in New York. AMP's motion to dismiss for lack of personal jurisdiction should be denied accordingly.

**IV.    Plaintiff has sufficiently alleged that AMP is liable for aiding and abetting the assault and battery against him by systemically assisting the violent and unlawful CUNY Encampment and its protestors.**

AMP's argument that Plaintiff has failed to allege AMP rendered knowing and substantial assistance to the assault and battery against him is based on an incomplete understanding of aiding and abetting liability that is contrary to Supreme Court precedent and on mischaracterizations about Plaintiff's allegations. The elements of aiding and abetting liability are that 1) "'the party whom the defendant aids must perform a wrongful act that causes an injury;'" 2) "'the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance;'" and 3) "'the defendant must knowingly and substantially assist the principal violation.'" *Twitter v. Taamneh*, 598 U.S. 471, 486 (2023) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).

The core of AMP's argument is that AMP cannot be liable for aiding and abetting the assault and battery against Plaintiff because he has not alleged that AMP knew about or directly participated in the attack against him. ECF No. 23 at 13-14. AMP fatally ignores the Supreme Court's holding in *Twitter v. Taamneh*, which developed upon the D.C. Circuit's analysis in *Halberstam v. Welch*, "long regarded as a leading case on civil aiding-and-abetting and conspiracy liability." *Twitter*, 598 U.S. at 485. Under *Twitter* and *Halberstam*, a defendant may be liable for aiding and abetting a wrongful enterprise's tortious act where the defendant has systemically supported the enterprise and the act was a foreseeable risk of the enterprise's wrongful conduct the defendant supported, regardless of whether the defendant knew about or directly assisted the act.

**A. Under the Supreme Court's decision in *Twitter*, a defendant who systemically assists a wrongful enterprise is liable for aiding and abetting the foreseeable tortious acts of that enterprise.**

In *Halberstam*, the D.C. Circuit found that a female defendant could be held liable for aiding and abetting her male partner's murder of a homeowner during a burglary gone wrong because she had systemically assisted her partner's burglary enterprise as his fence and bookkeeper. 705 F.2d at 488. Though the defendant was not present at the burglary when the murder happened, did not know about the particular burglary during which the murder occurred, and did not know or intend that the murder would happen, the D.C. Circuit found that she could nevertheless be held liable because she had given knowing and substantial assistance to her partner's activities by helping him turn his "stolen goods into 'legitimate wealth,'" thereby "intending to help him succeed by performing a function crucial to any thief." *Id*.; *Twitter*, 598 U.S. at 487. The defendant could be liable for the murder because she knew her partner was committing some sort of "personal property crime," the "foreseeable risk" of which was "violence and killing." *Halberstam*, 705 F.2d at 488.

In *Twitter*, the Supreme Court expanded upon *Halberstam*'s analysis regarding a defendant's liability for aiding and abetting a tort based on systemic support for a wrongful enterprise. The Court held that a defendant need not have been present at the scene of a tort or have lent any specific support to its commission to be liable where his assistance to the tortfeasor's wrongdoing was "so intentional and systematic" that he could be considered to have "assisted each and every" act of wrongdoing by the tortfeasor:

> To start, aiding and abetting does not require the defendant to have known "all particulars of the primary actor's plan." For example, a defendant might be held liable for aiding and abetting the burning of a building if he intentionally helped others break into the building at night and then, unknown to him, the others lit torches to guide them through the dark and accidentally started a fire. That leads to the next problem: As *Halberstam* makes clear, people who aid and abet a tort can be held liable for other torts that were "a foreseeable risk" of the intended tort. 705

11

F.2d, at 488. Accordingly, a close nexus between the assistance and the tort might help establish that the defendant aided and abetted the tort, but even more remote support can still constitute aiding and abetting in the right case.

*Twitter*, 598 U.S. at 495-96 (citations omitted); *see also id.* at 501-02.

The Court explained that a plaintiff can establish a defendant's liability for a particular wrong act based on "systemically and pervasively assist[ing]" a wrongful enterprise by alleging that the defendant "intentionally associated [itself] with [the wrongdoing] or affirmatively gave aid that would assist each of [the wrongful acts,]" or by alleging that the defendant and the wrongdoer "formed a near-common enterprise of the kind that could establish such broad liability." *Id.* at 501-02. The Court further held that a plaintiff may alternatively establish a defendant's liability for a "definable subset" of a wrongdoer's acts where relevant. *Id.* at 502.

The Court held that in evaluating whether a defendant has systemically rendered "knowing and substantial assistance" to wrongdoing, the "knowledge" and "substantial assistance" components "should be considered relative to one another' as part of a single inquiry designed to capture conscious and culpable conduct." *Twitter*, 598 U.S. at 503-04 (quoting *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991)). "The 'knowing' part of that inquiry is therefore designed to capture the defendants' state of mind with respect to their actions and the tortious conduct (even if not always the particular [wrongful] act). *Id.* A greater showing of one component allows a lesser showing of the other. *Id.* Where there is a direct nexus between the defendant's acts and the tort, "courts may more easily infer [] culpable assistance." *Id.* at 506. Where the plaintiff can show intentional aid that substantially furthered the tort, liability can attach even where the nexus is attenuated. *Id.* Where a plaintiff shows pervasive and systemic aid by the defendant to a wrongful enterprise, the defendant may be held liable for all the torts of that enterprise. *Id.* Thus, AMP may be held liable for the assault and battery by the protestors at the CUNY encampment based on

allegations that it systemically rendered knowing and substantial assistance to the CUNY encampment protestors' wrongdoing.

**B. AMP's arguments to dismiss Plaintiff's aiding and abetting claims fail under *Twitter* and *Halberstam*.**

AMP entirely ignores that it may be liable for a wrongful act that was a foreseeable result of its assistance to a wrongful enterprise. AMP challenges that Plaintiff has not alleged that its members assaulted him or marked him out as a target for the encampment protestors to attack; that he has not alleged that AMP knew of his identity or presence at the CCNY campus; that he has not alleged that AMP's members were present at the attack; and that he has not alleged that AMP took an overt act connected with the assault and battery. ECF No. 23 at 14. The Supreme Court in *Twitter* rejected such arguments that aiding and abetting liability cannot attach without a defendant's direct knowledge, presence, and participation in a wrongful act. *See* 598 U.S. at 496.

In focusing narrowly on disputing whether Plaintiff has alleged AMP's direct participation in the attack against Plaintiff, AMP fails to address its liability based on Plaintiff's allegations that AMP provided systemic and substantial aid to the violent and unlawful CUNY encampment and its protestors, which foreseeably led to the attack. AMP's only argument on this point is a handful of conclusory statements misrepresenting Plaintiff's allegations.

AMP claims that "Plaintiff fails to make any connection between AMP, a national nonprofit based in Virginia, and the individuals involved in the alleged assault at CCNY in New York City." ECF No. 23 at 14. This is false. Plaintiff's Complaint alleges the connection between AMP, NSJP, the NSJP chapters at CUNY and Columbia that created the CUNY Encampment, and the violent protestors occupying the encampment, and how the encampment foreseeably led to the attack on Plaintiff. Plaintiff alleges that AMP and NSJP organized a nationwide encampment movement to support violently and unlawfully takeovers of campuses, Compl. ¶¶ 146-153, 174-

13

185; 197-201; how AMP and NSJP worked closely with the CUNY and Columbia NSJP chapters in their operations, including disruptive and violent activities, *id*. ¶¶ 97-101, 103, 105, 107, 117, 145, 154-172, 186-189, 196-199, and in setting up the CUNY Encampment, *id*. ¶¶ 212-218; how AMP and NSJP continued to encourage, assist, and defend violent activities related to the CUNY Encampment after the attack on Plaintiff, *id*. ¶¶ 239-265; and how AMP and NSJP maintained their close support for and encouragement of violent and disruptive activities by the CUNY and Columbia chapters long after the CUNY Encampment was shut down, *id*. ¶¶ 266-303. To the extent AMP disputes Plaintiff's allegation that AMP created and acts through NSJP as untrue, this challenge is irrelevant on a motion to dismiss. *See supra* at I; *Ray*, 708 F. App'x at 722; *Financial Guar. Ins. Co.*, 783 F.3d at 405.

The attack on Plaintiff by the encampment protestors was a "foreseeable risk" of the unlawful and violent CUNY Encampment that AMP assisted. The encampment was part of a nationwide movement of encampments that AMP had organized and supported that were consistently and deliberately violent and unlawful. Compl. ¶¶ 174-185. The Columbia NSJP chapter that AMP supported and directed in establishing the CUNY encampment was notoriously and consistently violent and unlawful. *Id*. ¶¶ 103, 160-168, 186-189, 198-199, 244-261, 287, 295-297. AMP assisted with the CUNY Encampment's creation for violent and unlawful purposes. *Id*. ¶ 215. The protestors at the encampment were violent before and after the attack on Plaintiff, yet AMP maintained its support and encouragement for the encampment and for the CUNY and Columbia NSJP chapters and the protestors at the encampment amid their violence, including when they rioted less than a week later.

AMP knowingly provided systemic and pervasive assistance to the violent and unlawful CUNY Encampment and its wrongful purposes, and the attack on Plaintiff by the protestors at the

encampment was a foreseeable risk of the encampment. Plaintiff has thus sufficiently pled that AMP is liable for aiding and abetting the assault and battery against him. AMP's motion to dismiss his aiding and abetting claim should be denied accordingly.

**V.      Plaintiff has sufficiently alleged that AMP agreed to a conspiracy that was furthered by a co-conspirator's assault and battery against him.**

AMP's arguments concerning Plaintiff's conspiracy claim rely on an improperly narrow and misleading depiction of conspiracy liability and on mischaracterizations about Plaintiff's allegations. "To establish a claim of civil conspiracy, the plaintiff must demonstrate the primary tort plus the following four elements: "(1) an agreement (2) to participate in an unlawful act, '(3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme'" *Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (Sup. Ct. 1994) (quoting *Halberstam*, 705 F.2d at 477). AMP's arguments fails because they misstate the nature of the overt act required for conspiracy liability and the pleading requirements for establishing AMP's agreement to a conspiracy, and because Plaintiff's conspiracy claim is not merely a realleging of his aiding and abetting claim.

**A.   Plaintiff has sufficiently pled that AMP's co-conspirators attacked him as an overt act furthering a shared conspiracy.**

AMP argues that Plaintiff fails to "allege that AMP conspired to commit assault and battery," that there was "any communication or meeting of the minds between AMP and the assailants regarding the assault and/or battery, or *any* specific actions taken by AMP to further the alleged assault," and that Plaintiff did not "plead any overt act by AMP in support of the assault." ECF No. 23 at 16. AMP further argues that Plaintiff's conspiracy claim must be dismissed because he fails to allege "an underlying tort that [AMP] conspired in." *Id.* at 15-16. These arguments misstate the nature of conspiracy liability. The agreement to commit the unlawful acts that forms

the basis of the conspiracy need not be an agreement to commit the specific tort that harmed the plaintiff: the tort that harmed the plaintiff need only have been perpetrated by one of the conspirators as an overt act to further the conspirators' common plan. *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 80 (2d Cir.), *cert. denied*, 144 S. Ct. 83, 217 L. Ed. 2d 17 (2023) (citing *Halberstam*, 705 F.2d at 477). "[U]nder well-settled principles of conspiracy law, '[t]here is no requirement that each member of a conspiracy conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member.'" *Id.* at 78 (quoting *United States v. Rooney*, 866 F.2d 28, 32 (2d Cir. 1989)); *see also United States v. Labat*, 905 F.2d 18, 21 (2d Cir. 1990) ("The defendant need not know the identities of all of the other conspirators."). Nor does the defendant need to have taken any overt act to further the conspiracy or perpetrate the underlying tort: an overt act need only be done by one of his co-conspirators. *Freeman*, 57 F.4th at 78 (citing *United States v. Bicaksiz*, 194 F.3d 390 (2d Cir. 1999); *Halberstam*, 705 F.2d at 477).

Thus, Plaintiff does not need to allege that AMP conspired specifically to commit the assault and battery that produced Plaintiff's injury, he need only allege that one of AMP's co-conspirators committed the assault and battery to further the conspiracy's shared goal. *Id.* at 82. Plaintiff's Complaint satisfies this requirement.

The Complaint alleges that AMP conspired with NSJP and the NSJP chapters at CUNY and Columbia to commit wrongful acts of violence, property destruction, and resistance against law enforcement to unlawfully create and "defend" the CUNY Encampment as part of a plan to take over the CCNY campus and force CUNY's capitulation to the conspirators' demands. Compl. ¶¶ 352. The Complaint alleges that the NSJP chapters acted on this plan by unlawfully establishing the CUNY Encampment—with AMP's assistance and direction—and engaging in violence to

defend it. *Id*. ¶¶ 353-355. The Complaint alleges that the assault and battery against Plaintiff by NSJP chapters' protestors and their allies in the encampment was an overt act furthering this plan by "defending" the CUNY Encampment against a perceived threat and by further disrupting the CUNY campus to pressure CUNY's administration. *Id*. ¶¶ 354-355.

### B.  Plaintiff has met the requirement for alleging AMP's agreement to a conspiracy at the pleading stage.

AMP argues that "the Complaint offers no specific facts demonstrating how or when AMP allegedly entered into an agreement with the assailants, the nature of any communication or meeting of the minds between AMP and the assaults regarding the assault and/or battery, or *any* specific actions taken by AMP to further the alleged assault, beyond the mere fact of the assault and/or battery itself." ECF No. 23 at 16. AMP emphasizes that Plaintiff does not allege "the 'time, facts, and circumstances' regarding how the conspiracy began." ECF No. 23 at 16. As stated above, *see supra* at V(A), Plaintiff does not need to allege that AMP entered an agreement to commit the assault and battery against Plaintiff specifically, nor that AMP took any actions to further the assault and battery to be liable for the attack as a co-conspirator. Nor does Plaintiff need to allege specific facts regarding how and when AMP and its co-conspirators entered the agreement for the conspiracy.

The conspirators' agreement to a common plan may be shown by circumstantial evidence and courts have consistently recognized that conspiracies are difficult to allege by direct evidence because of their inherently secretive nature. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999) ("As is true in criminal conspiracies, agreements in civil conspiracies will not easily be shown by direct evidence, but may be inferred from circumstantial evidence."). "Plaintiffs are not required to allege the specific facts surrounding the conspiracy at [the pleading stage] of the litigation where' the necessary information [may be] within the

knowledge and control of the defendant[s]." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods.*
*Liab. Litig.*, 175 F. Supp. 2d 593, 634–35 (S.D.N.Y. 2001) (citation omitted). Allegations of a
"tacit understanding" or implicit or explicit acceptance of the "general objectives of the
conspiratorial scheme" suffice to satisfy the agreement element for civil conspiracy. *Id.* at 634-35.

Plaintiff alleges a strong basis for finding that AMP agreed, tacitly, implicitly, or explicitly
to the general objectives of a scheme to use the CUNY Encampment to unlawfully and violently
take over the CUNY campus and force demands on CUNY's administration based on the pattern
of direct collaboration between AMP and the CUNY and Columbia NSJP chapters in their protest
activities, including violent protests, AMP's role directed and organizing the activities of NSJP's
chapters, AMP's creation and of the encampment operation and close coordination with the
Columbia NSJP chapter in launching it, AMP's organization of supplies and assistance for the
creation of the CUNY Encampment, AMP's role mobilizing reinforcements for the riot at the
CUNY Encampment, and AMP's continued support for and defense of the CUNY and Columbia
NSJP chapters following their violent riot at the CUNY Encampment. Compl. ¶ 353. To the extent
that AMP argues that Plaintiff has not alleged that his attackers were parties to a conspiracy
because he described them as a "mob," AMP ignores that Plaintiff clearly alleges that his assailants
were protestors from the NSJP chapters and their allies occupying the CUNY Encampment that
he alleges to be AMP's co-conspirators. *Id.* ¶¶ 226-228, 233, 235-238, 354.

Plaintiff has thus sufficiently alleged that AMP agreed to an unlawful conspiracy to use the
CUNY Encampment to coerce CUNY's administration, which AMP's co-conspirators, the NSJP
chapters at CUNY and Columbia, attempted to further by the attack on Plaintiff. AMP's motion to
dismiss Plaintiff's civil conspiracy claim should be denied accordingly.

### C.  Plaintiff's conspiracy claim is not duplicative of his aiding and abetting claim.

AMP argues that Plaintiff's conspiracy claim should be dismissed because it is duplicative of his aiding and abetting claim. Dismissal of a duplicative conspiracy claim under New York law is permitted in the narrow circumstance where the conspiracy claim amounts to "realleg[ing] a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim," such as where a conspiracy count adds no new allegations to those of other counts "except to reiterate that [defendants] had conspired to commit the acts heretofore described." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 591 (2d Cir.2005); *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 755 F.2d 239, 251 (2d Cir.1985).

Aiding and abetting claims are not inherently duplicative of conspiracy claims and rely on separate elements requiring a distinct showing by a plaintiff, as recognized by the Supreme Court in *Twitter*:

> [I]n appropriate circumstances, a secondary defendant's role in an illicit enterprise can be so systemic that the secondary defendant is aiding and abetting every wrongful act committed by that enterprise—as in *Halberstam* itself. At this point, aiding-and-abetting liability begins to blur with conspiracy liability, which typically holds co-conspirators liable for all reasonably foreseeable acts taken to further the conspiracy. Yet, as noted above, aiding and abetting lacks the requisite agreement that justifies such extensive conspiracy liability.

*Twitter*, 598 U.S. at 496. The Second Circuit has quoted *Halberstam* approvingly in holding that the "'[t]here is a qualitative difference between proving an agreement to participate in a tortious line of conduct [– in the case of conspiracy –] and proving knowing action that substantially aids tortious conduct [– in the case of aiding and abetting],'" and that it is therefore "'important to keep the distinctions [between conspiracy and aiding and abetting] clearly in mind' because 'the distinctions can make a difference.'" *Freeman*, 57 F.4th at 81.

Plaintiff's Complaint reflects the distinct elements required for aiding and abetting claims and conspiracy claims. Plaintiff's aiding and abetting claim emphasizes the substantial and systemic assistance AMP rendered to the CUNY Encampment and the foreseeability of the attack

on Plaintiff as a result of the encampment. Compl. ¶¶ 236-238, 264, 346-350. Plaintiff's conspiracy claim emphasizes the strong evidence of AMP's agreement to a conspiracy with the NSJP chapters that attacked Plaintiff to use the CUNY Encampment to violently take over the CCNY campus and push their demands and how the attack on Plaintiff was to further that plan. *Id*. ¶¶ 215, 236, 239-265, 353. Plaintiff alleges distinct facts to support each claim and they stand as independent bases for recovery: Plaintiff does not need to establish an agreement between AMP and any co-conspirators for his aiding and abetting claim; and he does not need to show substantial assistance to wrongdoing for his conspiracy claim. Because his claims are distinct and require a separate factual showing for essential elements, they should not be dismissed as duplicative.

**VI.      The First Amendment does not insulate AMP from liability for Plaintiff's claims.**

AMP makes a token argument that its conduct at issue in this case is protected First Amendment activity. This argument fails for multiple reasons. AMP claims that Plaintiff's claims are based on "mere speech" and "hold[ing] AMP liable for speech … that he disagrees with; nothing more." This is false. Plaintiff's claims are based on AMP's role assisting the unlawful and violent CUNY Encampment and its protestors who attacked him in connection with AMP's unlawful goal of forcing demands on CUNY's administration. Plaintiff alleges that AMP was involved in organizing and directing the encampment's creation, supporting and encouraging the NSJP chapters who occupied the encampment in using violence to pressure CUNY to accede to AMP's demands, and defending that violence after it occurred. Compl. ¶¶ 215, 235-238, 346-350, 352-354. This is not "mere speech" that Plaintiff disagrees with and has nothing to do with AMP's political positions.

Where speech is integral to a tort or constitutes the tort itself, it is not protected by the First Amendment. *See, e.g., Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has

never been deemed an abridgment of freedom of speech ... to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *United States v. Rowlee,* 899 F.2d 1275, 1278 (2d Cir.1990) ("[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself. E.g., ... (conspiracy).") (citation omitted); *Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.,* 968 F.2d 286, 296 (2d Cir.1992) ("[T]he First Amendment is no bar to liability under the general common law prohibition of tortious interference with contract, which ... is directed against conduct, not speech."). AMP's citation to *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 921 (1982) that intimidation, coercion, and threats of boycott can be protected is unavailing because the conduct the AMP refers to in the opinion was all lawful *economic* activity and thus has no bearing on a claim related to conduct assisting unlawful violence.

To the extent Plaintiff's claims are supported by allegations concerning AMP's public posts and statements in, they demonstrate AMP's knowledge, intent, and role related to the violence and unlawfulness in the CUNY Encampment that precipitated the attack on Plaintiff. Plaintiff's allegations related to AMP's public statements show AMP's knowledge of violent and unlawful conduct by the groups and at the protests and encampments it organized, directed, supported, and encouraged, demonstrating that AMP was aware that it was organizing, supporting and encouraging violence by its actions, including with regard to the CUNY Encampment. Compl. ¶¶ 56-62, 138-145, 157-153, 174-185, 193-196, 239-265, 266-303, 353. These allegations also serve as evidence of AMP's agreement to a common plan with the NSJP chapters that created the CUNY Encampment to use the encampment to unlawfully and violently force their demands on CUNY's administration. *Id*. ¶ 353. The First Amendment provides AMP no protection from Plaintiff's claims and does not support dismissal of Plaintiffs' claims on any basis.

**VII.    AMP is not entitled to recover fees, costs, or damages under New York's anti-SLAPP law.**

AMP's final argument is that the Complaint is a "SLAPP" suit intended to interfere with AMP's free speech on issues of public concern and that AMP is therefore entitled to recover costs, attorney's fees, and damages under New York's anti-SLAPP law if Plaintiff's claims are dismissed. ECF No. 23 at 18-20. This argument fails at multiple levels.

**A.  New York's anti-SLAPP law does not apply in a federal proceeding.**

New York's anti-SLAPP law does not apply in a diversity proceeding before a federal court because it conflicts with federal procedural law. As this Court has previously found: "Courts in this district have held that § 70-a is inapplicable in federal court because its substantial basis standard articulated in New York's anti-SLAPP law conflicts with the standards under Federal Rules of Civil Procedure 12 and 56." *Editor's Pick Luxury LLC v. Red Points Sols. SL*, No. 1:22-CV-07463 (ALC), 2023 WL 6385993, at *6 (S.D.N.Y. Sept. 29, 2023) (quoting *Prince v. Intercept*, No. 21-CV-10075, 2022 WL 5243417, at *18 (S.D.N.Y. Oct. 6, 2022)); *see also Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design*, Inc., 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) (New York's anti-SLAPP law is inapplicable in federal court because it conflicts with Federal Rules of Civil Procedure 12 and 56); *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205 (S.D.N.Y. 2023) (same); *Carroll v. Trump*, 590 F. Supp. 3d 575, 585-86 (S.D.N.Y. 2022) (same); *La Liberte v. Reid*, 966 F.3d 79, 87-88 (2d Cir. 2020) (California's similar anti-SLAPP law held inapplicable in federal court because it conflicts with Federal Rule of Civil procedure 12 and 56).

AMP suggests that federal courts' consistent refusal to apply New York's anti-SLAPP law does not apply to a request for fees and costs under a Rule 12(b)(6) motion instead of the anti-SLAPP law's dismissal procedures, but courts have repeatedly rejected AMP's position. *See*

*Editor's Pick Luxury LLC*, No. 1:22-CV-07463 (ALC), 2023 WL 6385993, at *6 (denying a defendant's request for attorney's fees and costs under N.Y. Civ. Rights § 70-a pursuant to a Rule 12(b)(6) motion to dismiss); *Prince*, 634 F. Supp. 3d at 141-42 (same); *see also Carroll v. Trump*, 590 F. Supp. 3d at 585-86 (same); *CDC Newburgh Inc.*, 692 F. Supp. 3d at 223-24 (denying defendant's request to file a counterclaim under New York's anti-SLAPP because "New York's anti-SLAPP law does not apply in federal court").

### B.  AMP cannot recover under New York's anti-SLAPP because it has not complied with its procedural requirements.

AMP's request for costs, fees, and damages in its motion to dismiss is procedurally improper under the anti-SLAPP law. To recover under the anti-SLAPP law, a defendant must "maintain an action, claim, cross claim, or counterclaim." N.Y. Civ. Rights Law § 70-a. Thus, the plain text of New York's anti-SLAPP prohibits a defendant from seeking costs, fees, and damages as a tag-along to a motion to dismiss because it requires a defendant to bring a full-fledged claim for recovery. *See Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 489 (S.D.N.Y. 2021) (quoting N.Y. Civ. Rights law § 70-a); *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020) (noting that the anti-SLAPP law creates "an affirmative cause of action for certain defendant to recover attorneys' fees … in specified circumstances"). In *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, the district court denied a defendant's request for attorney's fees under New York's anti-SLAPP in its motion to dismiss despite granting the motion because "[t]he statute requires that *a pleading* of some sort be filed in order to collect attorney's fees" and noted that "even a cross-motion for fees would appear to be inadequate under Section 70-a(1)." 551 F. Supp. 3d 320, 333 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022). The court further held that because the complaint was dismissed before the defendant had "filed an answer asserting any sort of claim, it

would seem that, per the terms of the New York law, the [d]efendant must file a separate lawsuit in order to recover any attorneys' fees." *Id*.

AMP offers scant authority in support of its claim that it is entitled to fees under New York's anti-SLAPP should the Court dismiss Plaintiff's Complaint. AMP relies on *Bobulinski v. Tarlov*, 758 F.Supp. 3d 166 (S.D.N.Y. 2024) and *Heilbut v. Cassava Scis., Inc.*, 778 F.Supp. 3d 551 (S.D.N.Y. 2025) as examples of federal courts granting fees and costs under New York's anti-SLAPP. Neither is availing. *Bobulinski* is a heterodox opinion that stands alone against the weight of the above-cited cases in permitting recovery attorney's fees under the anti-SLAPP law in a federal court at the motion to dismiss stage and is contrary to plain-text of the anti-SLAPP law. *Heilbut* is inapposite because it concerned plaintiffs who brought a claim for recovery under New York's anti-SLAPP law for fees and costs they incurred in defending a prior action against them by the defendants. 778 F.Supp. 3d at 557. Because the *Heilbut* plaintiffs initiated an action for fees and costs under the anti-SLAPP as an affirmative claim, the district court found that Federal Rules 12 and 56 were not implicated. *Id*. at 567-68. *Heilbut* is thus consistent with *Lindell* in limiting recovery of costs and fees under the anti-SLAPP law to an affirmative claim for relief made in a pleading rather than a request tacked on to a motion to dismiss.

### C. AMP has not borne its burden for demonstrating its entitlement to fees, costs, and damages under New York's anti-SLAPP.

Even if AMP could make a request for costs, fees, and damages, AMP would nonetheless not be entitled to recovery because it has not demonstrated that this is an action "involving public petition and participation" that was "commenced without a substantial basis in fact and law and [that] could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civil Rights Law § 70-a. The anti-SLAPP law defines an "action involving public petition and participation" as "a claim based upon: (1) any communication in a place open

to the public or a public forum in connection with an issue of public interest; *or (2) any other lawful conduct* in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civ. Rights Law § 76-a (emphasis added). Under this definition, a claim must not only be "based upon" expressive conduct on a issue of public interest, but the expressive conduct itself must be lawful. AMP's request fails because Plaintiff's claims are not "based upon" AMP's lawful expressive conduct and AMP has not demonstrated that Plaintiff commenced this action without a substantial factual and legal basis.

First, Plaintiff's claims are not "based upon" AMP's lawful expressive conduct. In seeking fees, AMP repeats its mischaracterization of Plaintiff's allegations, claiming that "nearly all allegations against AMP by Plaintiff relate to statements made by AMP affiliates on matters of public interest." ECF No. 23 at 19. As stated above regarding AMP's First Amendment argument, this is not true. *See supra* at VI. AMP ignores that Plaintiff's aiding and abetting claim is based upon AMP's *conduct* organizing, directing, assisting, and supporting the violent and unlawful CUNY Encampment, and that Plaintiff's conspiracy claim is based on AMP's agreement to a conspiracy to unlawfully and violently take over the CCNY campus through the CUNY Encampment, which AMP's co-conspirators furthered by attacking Plaintiff. AMP's lawful public expressive conduct does not form the basis for either of these claims. AMP also ignores Plaintiff's allegation that AMP controls and acts through NSJP and the allegations of AMP's non-speech conduct through and with NSJP. Compl. ¶¶ 4, 15, 34-36, 215, 235-238, 346-350, 352-354.

To the extent that Plaintiff's allegations include public statements and posts by AMP, these allegations demonstrate a component of AMP's substantial assistance to and support for unlawful conduct and violence by the protestors who created the CUNY Encampment and attacked Plaintiff

and serve as circumstantial evidence of AMP's agreement to the conspiracy to violently take over the CCNY campus. *See supra* at VI; Compl. ¶¶ 56-62, 138-145, 157-153, 174-185, 193-196, 239-265, 266-303, 353. As such, this expressive conduct is either not lawful because it is integral to wrongful tortious conduct, *see Giboney,* 336 U.S. at 502; *Rowlee,* 899 F.2d at 1278 (2d Cir.1990), or is merely evidence of AMP's intent to assist wrongdoing  and agreement to participate in a conspiracy, not the conduct that Plaintiff alleges as the basis for his harm.

Second, AMP misstates the law in claiming that an "award of fees is mandatory" under the anti-SLAPP law on a successful motion to dismiss. It is not. AMP is required to demonstrate that Plaintiff brought his claims "without a substantial basis in fact and law" and that they "could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civ. Rights Law § 70-a(1). AMP does not argue that Plaintiff's claims lack a substantial basis beyond merely stating that "Plaintiff fails to state a claim against AMP." ECF No. 23 at 19.

AMP's request for compensatory damages fails along similar lines. The anti-SLAPP law requires a defendant to make an even greater showing to recover damages, mandating "an additional demonstration that the action … was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." N.Y. Civ. Rights Law § 70-a. AMP's "demonstration" is the conclusory assertion that the Complaint's "lack of connection between AMP's statements and the claims asserted by Plaintiff" and the "fallacious conflation between AMP and NSJP" show that Plaintiff commenced this action for the purpose of impairing "AMP's right to speech and association." ECF No. 23 at 19-20. As with AMP's arguments elsewhere, these unsupported claims ignore Plaintiff's allegations that AMP rendered substantial assistance to the CUNY Encampment and its protestors through non-speech acts, that unlawful speech acts—such as those constituting

assistance to wrongdoing—are not protected by the anti-SLAPP law or the First Amendment, and that the basis for AMP's conspiracy liability is its agreement to a common scheme which its co-conspirators furthered by attacking Plaintiff. AMP further fails to provide any support to its assertion that Plaintiff has made a "fallacious conflation between AMP and NSJP." AMP's claim is not only unsupported beyond a reference at the beginning of the Motion to AMP's corporate disclosure statement, *see* ECF No. 23 at 1-2, 1 n.1; ECF No. 20, but it is entirely inappropriate at the motion to dismiss stage where Plaintiff's pleading must be accepted as true and reasonable inferences drawn in his favor. *See supra* at I; *Ray*, 708 F. App'x at 722; *Financial Guar. Ins. Co.*, 783 F.3d at 405.

Thus, AMP has not carried its burden to "demonstrate" its entitlement to fees, costs, and damages, and it is procedurally impermissible for it to make factual claims as a defendant at the motion to dismiss stage. Its request must be denied accordingly.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny AMP's Motion to Dismiss in its entirety and should deny its request for fees, costs, and damages under New York's anti-SLAPP law.

Dated: September 5, 2025.                    Respectfully submitted,

/s/ Jacob William Roth
Jacob William Roth
*Pro Hac Vice*
jroth@dhillonlaw.com
561-227-4959
Matthew Seth Sarelson
msarelson@dhillonlaw.com
305-773-1952
NYS Bar: 5278775
DHILLON LAW GROUP, INC.
1601 Forum Plaza, Suite 403
West Palm Beach, Florida 33401

Josiah Contarino
jcontarino@dhillonlaw.com
917-423-7221
SDNY Bar: JC9047
NYS Bar: 5128517
50 Park Place, Suite 1105
Newark, NJ 07102

*Attorneys for Plaintiff*

## CERTIFICATE PURSUANT TO LOCAL CIVIL RULE 7.1(c)

I certify that the foregoing document complies with Local Civil Rule 7.1(c) as those portions of it subject to the Rule contain 8,735 words, which is at or under the permissible 8,750-word limit.

/s/ Jacob William Roth
Jacob William Roth

## CERTIFICATE OF SERVICE

I certify that on September 5, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jacob William Roth
Jacob William Roth