**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AMI HOROWITZ,

      Plaintiff,

      v.

AJP EDUCATIONAL FOUNDATION, INC.
d/b/a AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

      Defendants.

Case No. 1:25-cv-3412 (ALC)

---

## DEFENDANT AJP EDUCATIONAL FOUNDATION, INC. d/b/a AMERICAN MUSLIMS FOR PALESTINE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiff admits he trespassed on CCNY's campus to taunt protestors before being beaten by unidentified protestors or the NYPD. Based on the this, he attempts to hold a national non-profit with no affiliation to those bad actors liable for "aiding and abetting" his assault. Recognizing his failure to properly bring a claim under New York law, Plaintiff attempts to reframe his case via the federal Anti-Terrorism Act; a claim he does not raise.[1] But New York law dictates that plaintiffs must show knowing and substantial assistance in the principal violation; Plaintiff does not do so. At its core, this lawsuit is an attempt to muzzle a national non-profit that educates the American public about Palestine and the humanitarian crisis in Gaza. Plaintiff's complaint states no valid legal claims, and should be dismissed in full.

### 1. AMP Rightfully Disputes Jurisdictional Facts

Plaintiff believes AMP cannot challenge factual allegations in his Complaint in its dispute

---

[1] Per this Court's Individual Rules of Practice 2(D)(ii), "[i]f the non-moving party elects not to amend its complaint and the motion to dismiss is granted, it is unlikely that the Court will grant the non-moving party leave to amend."

of jurisdiction. Plaintiff's Memorandum of Law in Opposition to AMP's Motion to Dismiss at 4, ECF No. 32 ("Opp."). That is false. When defendants challenge jurisdictional facts, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Tandon v. Captain's Cove Marine of Bridgeport, Inc.*, 752 F.3d 239, 241 (2d Cir. 2014). Plaintiff's allegations rely heavily on his misplaced conclusion that AMP controls and directs National Students for Justice in Palestine ("NSJP"). (Opp. at 4.) Plaintiff claims this Court's jurisdiction over AMP derives from that purported association. *Id.* at 8. Yet this Court has broad discretion to "ferret out the facts pertinent to jurisdiction" and consider AMP's corporate disclosure statement, showing no relationship exists between AMP and NSJP. *See Tandon*, 752 F.3d at 441. This Court cannot ignore "extrinsic evidence that contradicts the material allegations of the complaint" regarding jurisdiction without abusing its discretion. *Id.* at 442.

Plaintiff misconstrues AMP's argument and claims AMP challenges non-jurisdictional facts. (*See, e.g.,* Opp. at 5-6.) As AMP stated in its papers, Plaintiff's Complaint includes conclusory statements that fail to meet his burden. (Opp. at 3.) *See Front King, LLC v. Talal*, No. 1:20-cv-08035(ALC), 2025 U.S. Dist. LEXIS 58947, at *9 (S.D.N.Y. Mar. 28, 2025) (dismissing a claim where plaintiff provided only "bare conclusory allegations"). Identifying Plaintiff's failure to meet his burdens does not equate to challenging non-jurisdictional factual allegations.

## 2. Plaintiff Fails to Meet Even the Low Threshold to Demonstrate Amount-in-Controversy

Plaintiff fails to meet the low bar to show a "reasonable probability" that he meets the $75,000 amount-in-controversy requirement. (Opp. at 6.) Clear factual distinctions exist between the facts Plaintiff alleges and those presented in the case upon which he relies heavily for this point. In *Schwartz v. Hitrons Solutions, Inc.*, the court found the plaintiff "describes a reasonably sophisticated company that could sell many thousands" of the challenged product, and thereby

make many thousands of dollars that would be in controversy. 397 F. Supp. 3d 357, 367 (S.D.N.Y. 2019). In contrast, Plaintiff asserts only that he "suffered bruises and wounds, primarily to his torso, and had to go to an urgent care facility," and "had to attend physical therapy for his arm and shoulder"; injuries that were more likely caused by interactions with non-party NYPD officers who "treated him aggressively" and put him "in a tight armlock". (Compl. ¶¶ 232, 234.) Plaintiff's unsubstantiated assertions in his opposition that he experienced nonspecific "personal injury, physical and mental pain and suffering, and attendant costs" does not save his deficient pleading. (Opp. at 7.) Plaintiff's claim for punitive damages cannot rescue him either. *See Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 Fed. Appx. 52, 54 (2d Cir. 2018) (holding emotional distress damages cannot revive a claim that otherwise fails "to allege any required medication or treatment"). As Plaintiff pleads insufficient facts to establish a rebuttable presumption of a good faith representation of the amount in controversy, AMP need not overcome any presumption.

### 3. Plaintiff Fails to Demonstrate AMP Committed Any Tort in New York that Creates Specific Jurisdiction

Plaintiff also fails to identify facts to support this Court's exercise of specific jurisdiction over AMP. Plaintiff concedes that AMP committed no torts in New York; he instead relies on his assertion that AMP aided and abetted acts by others and conspired with others in furtherance of the attack on him. (Opp. at 9.) Plaintiff alleges no facts that show that AMP "purposefully availed itself of the privilege of conducting activities in [New York], thus invoking the benefits and protections of its laws." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, 2025 U.S. Dist. LEXIS 84645, at *11 (D. Nev. 2025) (holding the plaintiff failed to demonstrate personal jurisdiction over AMP because "[d]istributing a message through social media, absent specific targeting of the forum, is insufficient to establish personal jurisdiction"). This Court lacks

jurisdiction over AMP, warranting dismissal of Plaintiff's claims against it.

### 4. AMP is Not Liable for the Acts of NSJP

Plaintiff fails to sufficiently allege NSJP operates as AMP's project. Plaintiff alleges NSJP is "manage[d], controlle[d], and operat[ed]" by AMP, Compl. ¶ 36, based on his singular factual allegation that AMP attended a convention hosted 15 years ago where AMP allegedly announced the founding of NSJP. *Id.* ¶¶ 34-36. Plaintiff cites a 96-page report on NSJP, which mentions AMP only three times, as support that NSJP was "founded *with the support of* American Muslims for Palestine." *Id.* ¶ 34 n.32 (emphasis added). The report does not claim AMP provided anything beyond initial support for NSJP's existence, *id.,* and Plaintiff cites no statements, actions, or conduct in the last 14 years that demonstrate NSJP is indeed part of AMP.

Given that Plaintiff only attributes one act directly to AMP—its Executive Director spoke at two encampments—the claims against AMP fail under any theory of liability. *Id.* ¶¶ 189-90.

### 5. Plaintiff Fails to State a Claim for Aiding and Abetting Assault Under NY Law

#### a. Plaintiff's Claims Fail Under New York Law

By failing to apply the appropriate standard, Plaintiff concedes his claims fail under New York law. Plaintiff alleges only violations of New York common law, *Id.* ¶¶ 345-356. Under New York law, Plaintiff fails to assert a proper claim of aiding and abetting assault and battery. Plaintiff's attempts to twist a student protest movement into an "illicit enterprise" to trigger the ATA standard cannot save his meritless claim. (Opp. at 24.)

Under New York law, Plaintiff must establish aiding and abetting by showing the Defendant provided "knowing and substantial assistance in the principal violation." *Doe 1 v. Deutsche Bank Aktiengellschaft*, 671 F. Supp. 3d 387, 416 (S.D.N.Y. 2023). In New York, "the weight of the case law . . . defines knowledge in the context of an aiding and abetting claim as

actual knowledge." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 254 n.4 (S.D.N.Y. 2005). "New York common law, which controls the analysis here, has not adopted a constructive knowledge standard for imposing aiding and abetting liability. Rather, New York courts and federal courts in this district, have required actual knowledge." *Kolbeck v. LIT Am., Inc*., 939 F. Supp. 240, 246 (S.D.N.Y. 1996). Substantial assistance requires "intentional or deliberate acts directed at causing harm which would rise to the level of actionable conduct in relation to the subject assault." *Doe 1*, 671 F. Supp. 3d at 416.

Plaintiff effectively concedes AMP had no "actual knowledge of the underlying tort," *Farah v. City of New York*, 214 N.Y.S.3d 598 (N.Y. Sup. Ct. 2024), and that AMP did not provide substantial assistance to the alleged assault through intentional acts directed at causing harm. At most, Plaintiff alleges the assault constitutes a "foreseeable risk" of the CUNY encampment. Compl. ¶ 347. But "foreseeable risk" and "systemic and substantial aid" are not the standard for aiding and abetting liability under New York law. Even if it were, it would still fail. *See Freeman ex rel. Est. Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 82 (2d Cir. 2023) ("To hold a defendant liable for a coconspirator's actions merely because they are foreseeable—even though wholly detached from the shared conspiratorial plan—would stretch the concept of civil conspiracy too far beyond its origin.").

**b. Even Under *Twitter v. Taamneh* and *Halberstam v. Welch*, Plaintiff's Claims Fail**

Rather than applying New York state law to his claims, Plaintiff relies upon on two cases: *Twitter v. Taamneh*, 598 U.S. 471, 485 (2023), a Supreme Court case analyzing conduct under the Anti-Terrorism Act ("ATA"), and *Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983), a case Congress relied on to enact Section 2333(d) of the ATA to "provide the proper legal framework for civil aiding and abetting and conspiracy liability."

To establish aiding-and-abetting under *Halberstam*, plaintiffs must allege (1) "the party whom the defendant aids [performed] a wrongful act"; (2) the defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance," and (3) the defendant "knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477. Culpable participation requires an "affirmative act" undertaken "with the intent of facilitating the offense's commission." *Id*. at 490. Plaintiff fails to meet this standard.

*Twitter* makes clear that "it is not enough, as plaintiffs contend, that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrong that constitute it. Rather a defendant must have aided and abetted (by knowingly providing substantial assistance) another person in the commission of the actionable wrong." *Twitter*, 598 U.S. at 495. "People who aid and abet a tort can be held liable for other torts that were a 'foreseeable risk' of the *intended* tort." *Id.* at 496 (emphasis added). And if the defendant's role is "so systemic" in an illicit enterprise, the defendant can be liable for every tort committed. *Id.*

Plaintiff fails to plead that AMP aided and abetted another tort or illicit enterprise. At most, Plaintiff alleges that NSJP, purportedly acting on behalf of AMP, supported "organiz[ing] a nationwide encampment movement," Opp. at 18, taken up by local SJP chapters, which were "formally unaffiliated" with NSJP. Compl. ¶ 34. Plaintiff fails to demonstrate the "creat[ing], maintain[ing], and run[ning]" of an encampment constitutes tortious or illicit conduct. *Id*. ¶ 215. Nor does Plaintiff plead how assault is a foreseeable risk of any "intended" tort. Instead, Plaintiff intersperses vague and conclusory references to certain student encampments as "illegal" or "violent." *Id*. ¶¶ 59, 135, 138. These unsupported allegations do not cure a fatal flaw—Plaintiff fails to establish how student encampments constitute an "illicit enterprise." The Complaint largely relies on social media posts by NSJP or affiliates, which reference peaceful civil disobedience. *See,*

*e.g., id*. ¶¶ 90, 97, 100, 106, 107, 110, 123-129. Plaintiff even concedes that AMP's leadership does not advocate for violence. *Id*. ¶ 60. Plaintiff cites isolated instances at or around encampments which led to arrests or property damage. *Id*. ¶ 260. Plaintiff himself recognizes that, at one protest, 60% of those arrested were unaffiliated with CUNY. *Id*. ¶ 260. He does not establish any tort AMP knew of, agreed to or carried out. At most, Plaintiff alleges that NSJP, not AMP, shared a toolkit created in collaboration with other non-profit organizations, which contained citations to a separate toolkit by a separate organization, that provided a vague guide to undefined "direct actions." *Id*. ¶¶ 82-85. This is not enough.

Plaintiff identifies no evidence that AMP had involvement in creating the CCNY encampment, and instead relies on his perceived link between AMP and NSJP, then between NSJP and the Columbia encampment, then between Columbia's encampment and CUNY's encampment. *Id*. ¶¶ 215, 353. He fails to sufficiently allege AMP ran any illicit enterprise, ordered students to commit property damage or violence, or engaged in any other tortious activity. Defendant's aiding and abetting claim therefore fails, under any standard.

**6.  Plaintiff Fails to Properly Plead a Claim for Conspiracy**

Plaintiff's conspiracy claim also fails. A conspiracy requires an illicit enterprise or an agreement to commit a tort. *Alexander & Alexander, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). Plaintiff's factual allegations fail to establish either. Plaintiff claims that AMP, through NSJP, conspired with SJP chapters to set up student encampments. Plaintiff's attempt to twist student protests into a tortious or illegal enterprise through vague and conclusory allegations fails. Although Plaintiff claims AMP conspired with NSJP and local chapters to "commit wrongful acts of violence, property destruction, and resistance," Opp. at 21, he alleges no facts to demonstrate AMP actually directed students or community members to commit acts of violence to "defend"

7

the encampments; and certainly no facts to say AMP directed any alleged attack on Plaintiff in particular. Compl. ¶ 148. Plaintiff therefore fails to plead AMP's involvement in any illicit enterprise or any agreement to commit a tort against Plaintiff, and his conspiracy claim fails.

### 7.  Plaintiff's Conspiracy Claim is Duplicative

Plaintiff wrongly attempts to establish liability for the same tort through two similar theories of secondary liability, relying on irrelevant caselaw which explains how *proof* of aiding and abetting liability differs from proof of conspiracy liability. New York courts have clearly held plaintiffs may not "reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co*., 404 F.3d 566, 591 (2d Cir. 2005). Both civil conspiracy and aiding and abetting claims aim to "hold the co-conspirator defendants secondarily liable for the primary torts committed by" other actors. *In re Platinum-Beechwood Litig*., 427 F. Supp. 3d 395, 475 (S.D.N.Y. 2019). Courts therefore routinely dismiss conspiracy claims attempting just that. *See, e.g., Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec*., LLC, No. 12-CV-3723 (RJS), 2016 WL 5719749, at *7 (S.D.N.Y. Sept. 29, 2016); *Briarpatch Ltd. LP v. Phoenix Pictures, Inc.,* 312 F. App'x 433, 434 (2d Cir. 2009). Plaintiff's conspiracy claim fails.

### 8.  AMP's Speech is Protected by the First Amendment

Although Plaintiff insists this claims against AMP rest on conduct and not speech, his allegations relate only to AMP's speech. Plaintiff cites cases to support "speech [which] is integral to a tort or constitutes the tort itself" is unprotected by the First Amendment. (Opp. at 25-26.) These cases have no relevance here. Speech does not establish assault. *Compare with Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York, Inc.,* 968 F.2d 286, 295 (2d Cir. 1992) (anti-discrimination statutes can be violated by speech).

Further, none of the speech Plaintiff identifies provides evidence of a conspiracy, aiding

and abetting, or another element of liability for a tort, therefore *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990) is inapposite. Plaintiff concedes AMP did not publicly advocate for violence. *See e.g.,* Compl. ¶ 60. Plaintiff alleges merely that AMP supported civil disobedience. *See, e.g., id*. ¶ 189-90 (alleging AMP's Executive Director spoke at two encampments); *Id*. ¶¶ 90, 97, 100, 106, 107, 110, 123-129 (alleging NSJP, not AMP, encouraged peaceful protest tactics).

### 9.  The Fee-Shifting Provision of New York's Anti-SLAPP Law Applies

Two recent decisions from this Court establish fees as recoverable under New York's Anti-SLAPP law. *Helibut v. Cassave Sciences, Inc*., 778 F. Supp. 3d 551, 569 (S.D.N.Y. 2025); *Bobulinski v. Tarlov*, 758 F.Supp.3d 166, 186 (S.D.N.Y. 2024). "Although some courts in this District have come to a contrary conclusion, those decisions did not 'distinguish between the "substantial basis" standard as a procedural mechanism for dismissal—which conflicts with Rule 12—and the "substantial basis" standard as a substantive standard for entitlement to [damages]— which does not conflict with any federal Rule.'" *Helibut*, 778 F. Supp. 3d at 569 (quoting *Bobulinski*, 758 F.Supp.3d at 189 n.24). Plaintiff relies on cases that fail to acknowledge this distinction. Because Plaintiff brings state claims against AMP, AMP may utilize state substantive remedies. *Bobulinksi,* 758 F. Supp. 3d at 183-184 (in diversity cases, state substantive law applies and defendants may therefore recover fees under New York's Anti-SLAPP law in federal court).

### 10.  Defendant AMP need not file a separate claim to recover fees

The New York legislature articulated its "clear intent" in enacting New York's anti-SLAPP laws, to offer "a vehicle through which defendants could expeditiously halt SLAPP claims and recover attorney's fees and costs without the burden of the same protracted litigation that [it] was designed to combat." *Isaly v. Garde*, 83 Misc. 3d 379, 390 (N.Y. Sup. Ct. 2024). In *Isaly*, the court authorized costs and fees sought by defendants as part of a motion to dismiss. "That the legislature

established a separate cause of action for anti-SLAPP remedies merely reflects the common will of New York that anti-SLAPP remedies be available in federal court." *Id*. Second Circuit authority clarifies fee awards as a substantive provision of state law which therefore apply in federal court.

Plaintiff cites cases decided before *Heilbut* and *Bobulinski* clarified the substantive nature of the fee award, and that rely on outdated formulations of the statute. Further, these cases all rely on an earlier case which acknowledges it does not fully consider the issue. *See Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 333 (S.D.N.Y. 2021).

**11. Defendant AMP is Entitled to Fees Under Anti-SLAPP**

Plaintiff fails to state a claim upon which relief may be granted, which shows he commenced this action without a substantial basis. *Bobulinksi*, 758 F. Supp. 3d at 185. Further, AMP demonstrates its actions arose from lawful communications made in public spaces. Compl. ¶ 60. Plaintiff's claims derive from AMP's lawful speech and his effort to stifle the speech and activities of AMP, as a national non-profit advocating on behalf of Palestinian human rights. This case presents the quintessential fact scenario warranting anti-SLAPP awards.

Plaintiff filed this suit for improper purposes. In a false imprisonment suit filed against pro-Palestine groups for holding a protest that caused a plaintiff to miss a flight, the court noted that "the [Complaint] is rife with allegations that are irrelevant to Plaintiff's stated causes of action and which are only a hair's breadth away from calling Defendants terrorists," including allegations that U.S.-based nonprofits "engaged in a 'propaganda offensive' on behalf of Hamas." *Manhart v. WESPAC Found., Inc*., No. 24-CV-08209, 2025 WL 2257408, at *15 (N.D. Ill. Aug. 7, 2025). The *Manhart* court dismissed the case with prejudice, and sanctioned the Plaintiff under Rule 11. *Id.*, at *15.  AMP respectfully requests this Court award it costs, fees, and damages incurred by the need to defend itself here.

DATED:        September 19, 2025
              New York, NY

                                Respectfully Submitted,

                                BELDOCK LEVINE & HOFFMAN LLP

                        By:     _____
                                Luna Droubi
                                99 Park Ave., PH/26th Floor
                                New York, NY 10016
                                Tel: (212) 277-5875
                                Fax: (212) 277-5880

                                Christina A. Jump
                                (*pro hac vice* application pending)
                                Samira S. Elhosary
                                (*pro hac vice* application pending)
                                Constitutional Law Center
                                for Muslims in America
                                100 N. Central Expy. Suite 1010
                                Richardson, Texas 75080
                                Tel: (972) 914-2507
                                Fax: (972) 692-7454
                                cjump@clcma.org
                                selhosary@clcma.org

                                COUNSEL FOR DEFENDANT
                                AJP EDUCATIONAL FOUNDATION, INC. d/b/a
                                AMERICAN MUSLIMS FOR PALESTINE

                                *The Constitutional Law Center for Muslims in
                                America is the legal division of the Muslim Legal
                                Fund of America*