UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
  AMI HOROWITZ,                              :
                                             :
                            Plaintiff,       :
                                             :        1:25-cv-3412 (ALC)
           -against-                         :
                                             :        CORRECTED OPINION &
  AJP EDUCATIONAL FOUNDATION, INC.           :        ORDER
  AND NATIONAL STUDENTS FOR                  :
  JUSTICE IN PALESTINE,                      :
                            Defendants.      :
                                             :
-----------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Ami Horowitz brought this action against Defendants AJP Educational

Foundation, Inc. d/b/a American Muslims for Palestine ("AMP" or "Defendant") and National

Students for Justice in Palestine ("NSJP") (together, "Defendants") for certain torts against

Plaintiff in violation of New York state law. Dkt. No. 1 at 196–197. Before the Court is

Defendant AJP's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1),

12(b)(2), and 12(b)(6) (the "Motion"). Dkt. No. 27. For the reasons outlined below, the Motion is

**GRANTED** with respect to Plaintiff's claim for aiding and abetting assault and battery; the

Motion is otherwise **DENIED**.

## BACKGROUND

I.    **Factual Background**[1]

The Complaint (Dkt. No. 1, "Compl.") is over 200 pages long with several detailed

factual allegations, the complete recitation of which is not necessary for the resolution of the

---

1The following facts are taken from Plaintiff's Complaint, Dkt. No. 1, and are presumed true. *See Infra __*
(explaining that in considering a motion to dismiss pursuant to Rule 12(b)(6), courts accept as true all factual
allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.)

instant Motion. Therefore, the Court includes here only the facts relevant to the resolution of the Motion.

      a.   Background About the Parties

Horowitz is a documentarian and civil rights activist. AMP is a 501(c)(3) nonprofit corporation incorporated in California with its principal place of business in Falls Church, Virginia. Defendant NSJP is an unincorporated association without a formal place of business or publicly identified leadership structure that was created and is operated by AMP.

AMP was founded for the direct purpose of serving certain political aims in the United States. Defendant NSJP is AMP's on-campus brand, a project created to manage and control a network of chapter and affiliate organizations across hundreds of campuses on behalf of AMP so that they can be used to serve its political aims.

In April 2024, AMP and NSJP began a largescale operation coordinating, guiding, and commanding NSJP's network of on campus chapters to engage in protests by building encampments to participate in civil disobedience with the goal of making certain political demands. One example of these activities occurred on April 24, 2024, when AMP's Executive Director, Osama Abuirshaid, visited an encampment at Columbia University ("Columbia"). During that visit, Abuirshaid made a fiery speech to the encampment protestors and declared to the NSJP protestors that there was a "war" on them in America. He also stated that there was a war against their First Amendment rights, and that police were repressing them. Abuirshaid shouted that AMP and the protestors were "going to continue to fight" until they achieved their political goals. Abuirshaid's visit to NSJP's Columbia chapters and affiliates and their encampment coincided with the creation of the encampment at the City University of New York

("CUNY") the following day—which the Columbia chapters assisted with.

b. The Incident with Plaintiff

On April 25, 2024, over 200 members of NSJP's chapters and affiliates at CUNY gathered to set up an encampment in a public square at CUNY's campus at the City College of New York ("CCNY"). In the late afternoon on April 26, 2024, Plaintiff Horowitz entered CCNY's campus to film a video. He approached the encampment with an American flag. A mob of protestors from the encampment surrounded him. After swarming from the encampment to surround Horowitz, the mob immediately ripped the American flag from Horowitz hands, smashed it on the ground, and began beating him. The attack occurred during the middle of the day, in broad daylight, in full view of the surrounding campus, the encampment, and hundreds of onlookers. The mob's members kicked, punched, and headbutted Horowitz, aiming strikes at his throat, spleen, and kidney.

While beating Horowitz, the mob dragged him to the ground and shoved him down nearby stairs. After being shoved down the stairs, Horowitz got up and ran back to retrieve his flag. As Horowitz went for the flag, the mob grabbed him again and continued beating him. The mob then pushed Horowitz off the ledge of a nearby retaining wall. Horowitz got up and ran back to the flag again. Again, he was grabbed, punched, kicked, and headbutted by the mob.

After a third round of mobbing occurred, officers from CUNY's campus police and the New York Police Department ("NYPD") arrived and detained Horowitz, but they did not detain anyone from the mob. The police bodily removed Horowitz him from the scene in a tight armlock. As a result of the mob's attack, Horowitz suffered bruises and wounds, primarily to his torso, and he had to go to an urgent care facility for examination. Horowitz also had to attend

3

physical therapy for his arm and shoulder, which were injured during the attack. He continues his physical therapy treatment to this day.

## II.    Procedural History

On April 24, 2025, Plaintiff Ami Horowitz filed a Complaint against Defendants seeking damages against Defendants for aiding and abetting assault and battery (Count I), and civil conspiracy to commit assault and battery (Count II) in violation of New York state law. Dkt. No. 1. On July 23, 2025, Defendant filed a letter with the Court seeking leave to file a motion to dismiss. Dkt. No. 19. On August 1, 2025, the Court granted Defendant leave to file a motion to dismiss this action and set a briefing schedule for the motion. Dkt. No. 22. On August 22, 2025, Defendant moved to dismiss this action pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). Dkt. No. 26. On September 5, 2025, Plaintiff filed an Opposition to Defendant's Motion. Dkt. No. 32. On September 19, 2025, Defendant filed a Reply in further support of its Motion. Dkt. No. 35. The Court considers the Motion fully briefed.

## LEGAL STANDARD

### I.    Motions to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) in General

Rule 12(b)(1) allows for a case to be dismissed "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When deciding a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*,

547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

## II. Motions to Dismiss Under Federal Rules of Civil Procedure 12(b)(2) in General

The burden of establishing that a court has personal jurisdiction over the defendant lies on the plaintiff. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d. Cir. 2003); *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). However, the extent of this burden "depends upon the procedural context in which the jurisdictional challenge in raised." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369,373 (S.D.N.Y. 2009). Where there has been no jurisdictional discovery and no evidentiary hearing is held, the plaintiff "need make only a prima facie showing by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc., v. Naughton*, 806 F.2d 361,365 (2d Cir. 1986). "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks and citations omitted).

When deciding a motion to dismiss for lack of personal jurisdiction (i.e., pursuant to Rule 12(b)(2)), courts may rely on the pleadings, as well as the documents cited therein, and any affidavits submitted by the parties. *DiStefano*, 286 F.3d at 81, 84 (internal quotation marks and citations omitted). When evaluating these documents, the Court must "construe the pleadings and

affidavits in the light most favorable to [the plaintiffs], resolving all doubts in [their] favor." *Id*.

### III. Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) in General

To survive a motion to dismiss made pursuant to FRCP 12(b)(6), a complaint must allege facts sufficient to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The Second Circuit has counseled that, at the pleading stage, a plaintiff faces only a minimal burden." *Bandyopadhyay v. State Univ. of New York*, 2021 WL 1209420, at *3 (E.D.N.Y. Mar. 30, 2021) (citations and internal quotations omitted). Therefore, the plaintiff's complaint need not contain "detailed or elaborate factual allegations." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014). However, the plaintiff's claims must be more than "speculative." *Twombly*, 550 U.S. at 545.

When ruling on a motion to dismiss made pursuant to Rule 12(b)(6), the court must also "draw all reasonable inferences in [plaintiff's] favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). In addition, the court must assume that all "well-pleaded allegations" are true. *Iqbal*, 556 U.S. at 679. This assumption does not extend to "legal conclusions" or "legal conclusion[s] couched as a factual allegation[s]." *Id.* at 678–79. Those the Court may properly disregard. *Id*. Those the Court may properly disregard. *Id*. When deciding the motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

**DISCUSSION**

Defendant raises four potential grounds for dismissal of the Complaint. First, Defendant contends that dismissal of this action in its entirety is warranted pursuant to Rule 12(b)(1), because the Court lacks subject matter jurisdiction over this action due to Plaintiff's failure to allege an amount in controversy that supports diversity jurisdiction. Second, Defendant contends that this action should be dismissed pursuant to Rule 12(b)(2) because the Court lacks personal jurisdiction over Defendant. Third, Defendant contends that dismissal is warranted pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim for either cause of action. For the reasons discussed below, the Motion is **GRANTED** in part and **DENIED** in part.[2]

## I.  Defendant's Challenge Made Pursuant to Rule 12(b)(1) Fails

This case involves two claims by Plaintiff under New York state law. Plaintiff's asserted basis for this Court to hear this case (i.e., the basis for the Court's subject-matter jurisdiction) is diversity jurisdiction under 28 U.S.C. § 1332. Compl. ¶ 10. Diversity jurisdiction exists when a case involves parties who are citizens of different states and an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332.

Defendant argues that this Court lacks subject matter jurisdiction because Plaintiff fails to adequately allege that the amount in controversy in this suit exceeds $75,000. Defendant highlights that Plaintiff's only explicit allegation concerning damages in the Complaint is that "the amount in controversy exceeds $75,000." Dkt. No. 27 at 10. Defendant further contends that

---

2 Defendant claims that their actions are protected by the First Amendment since Plaintiff is challenging "mere speech." This argument mischaracterizes the Complaint. At this stage of the litigation, drawing all inferences in the Plaintiff's favor, Defendant's argument is without merit. For these reasons, the aforementioned argument by Defendant also fails.

Plaintiff's factual allegations that he suffered bruises and wounds, injury to his arm and shoulder, necessitating physical therapy, and extensive physical, mental, and monetary damages is insufficient to support a finding that the amount in controversy exceeds $75,000. The Court disagrees.[3]

A plaintiff "invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of $75,000," but that burden is "hardly onerous," because there exists "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted). However, the presumption is available "only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Id*.

"In considering whether a plaintiff meets the amount in controversy, the Court may aggregate claims because 28 U.S.C. § 1332 'confers jurisdiction over civil actions rather than specific claims alleged in a complaint.'" *Freeman v. Jacobson*, No. 20-CV-10040 (SN), 2021 U.S. Dist. LEXIS 152903, at *9 (S.D.N.Y. Aug. 13, 2021) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999). "A plaintiff may satisfy th[e] jurisdictional minimum by aggregating claims against multiple defendants . . . when their liability is common, undivided, or joint." *Elavon, Inc. v. Ganzfried*, No. 20-cv-908, 2022 U.S.

---

3 Defendant's citation to *Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 U.S. App. LEXIS 2011 (2d Cir. Jan. 26, 2023) does not alter the Court's conclusion. As it relates to the amount in controversy requirement, that suit involved multiple plaintiffs who asserted in their complaint that the amount in controversy exceeded $75,000. The Second Circuit concluded that it was unclear whether the complaint meant that each plaintiff's claim exceeded $75,000, as required for diversity jurisdiction, or if the amount was claimed by plaintiffs collectively. It thus remanded the suit to the district court for it to determine whether diversity jurisdiction existed in the suit. The Second Circuit's analysis thus hinged on the existence of multiple plaintiffs in the suit, a fact which does not exist here.

Dist. LEXIS 180029, at *12 (E.D.N.Y. Sep. 30, 2022). "Allegations of civil conspiracy may provide the basis for joint liability." *Id*. at 13.

The types of damages a court may consider in determining whether a plaintiff has sustained its burden include the plaintiff's actual damages, emotional distress damages, and punitive damages. *See Freeman v. Jacobson*, No. 20-cv-10040, 2021 U.S. Dist. LEXIS 152903, at *9–*13 (S.D.N.Y. Aug. 13, 2021). A plaintiff need not plead a specific dollar amount to satisfy the amount in controversy element of the statute; the amount in controversy element is met where the court can determine that the type of claim asserted by plaintiff is worth more than $75,000. *Id*. "Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994).

Here, Plaintiff seeks damages for the physical, mental, and monetary injuries he suffered as a result of the mob attack. After careful review of the Complaint, the Court concludes that Plaintiff's claims for actual, punitive, and emotional distress damages satisfies the amount in controversy requirement. Therefore, this Court has subject matter jurisdiction.

As discussed in greater detail below, Plaintiff adequately states a claim for civil conspiracy to commit assault and battery. Should he prevail on these claims, Plaintiff would be entitled to compensation of the costs to cover the medical care he has received and/or requires. While the Court is unable to place a value on such care, given the well-known costs of healthcare in this country, these damages could easily exceed $75,000.

In addition, "in cases of personal torts, 'vindictive actions,' such as assault and battery . . . where the elements of fraud, malice, gross negligence, cruelty, or oppression are involved,

9

punitive or exemplary damages may be recovered." *Freeman*, 2021 U.S. Dist. LEXIS 152903, at *11 (citations omitted). Here, Plaintiff requests, and may be entitled to, punitive damages. The potential recovery for these punitive damages also supports a finding that the amount in controversy here exceeds $75,000.

Finally, a plaintiff "can plainly assert emotional distress damages for the intentional torts directed at him." *Id*. Here, in connection with the intentional tort of civil conspiracy to commit assault and battery, Plaintiff alleges that because of the mob attack that occurred on April 26, 2024, he suffered "significant physical, mental, and monetary damages for which Defendants AMP and NSJP are liable." Compl. ¶ 356. These allegations are sufficient to support Plaintiff's claim for emotional distress. *See Id*. ("For a garden-variety emotional distress claim, the evidence of mental suffering is limited to the plaintiff's testimony of [their] injury.") (cleaned up). For a garden-variety emotion distress claim, "[c]ourts in this district typically award $30,000 to $125,000." *Id*. Where, like here, the suit involves emotional distress claims based, in part, on attacks motivated by ethnicity, courts in this district typically award anywhere from $30,000 to $115,000. *See Suarez v. Mosaic Sales Sols. US Operating Co.*, LLC, 720 Fed. Appx. 52, 54 (2d Cir. 2018) (discussing emotional damages awards ranging from in suits involving animosity to ethnic minorities).[4] Resolving all doubts in Plaintiff's favor as the Court must for purposes of this motion, Plaintiff's emotional distress claim, alone, would be sufficient to satisfy the amount in controversy requirement.

---

[4] Defendant citation to *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 Fed. Appx. 52, 54 (2d Cir. 2018) for the proposition that "emotional distress damages cannot revive a claim that otherwise fails 'to allege any required medication or treatment,'" is nonsensical here, as Plaintiff has clearly stated he required therapy for his injuries. If anything, *Suarez* supports a finding of jurisdiction here because the Court in *Suarez* acknowledged that claims for emotional distress damages in cases involving animosity to ethnic minorities present a "serious injury" that is worth anywhere from $30,000 to $114,000.

For these reasons, the Court holds that Plaintiff has alleged to a reasonable probability that his injuries exceed $75,000 in compensatory, emotional distress, and punitive damages. Therefore, the presumption applies and the Court has subject matter jurisdiction under 28 U.S.C. § 1332. However, Defendant can overcome this presumption if it can show "to a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (internal citations and quotation marks omitted; alteration original). "[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (*quoting Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785-86 (2d Cir. 1994)) (alteration original).

Here, Defendant does not even attempt to overcome the rebuttable presumption. Instead, Defendant argues that because "Plaintiff pleads insufficient facts to establish a rebuttable presumption of a good faith representation of the amount in controversy, AMP need not overcome any presumption." Dkt. No. 35. Not so. As outlined above, Plaintiff has pleaded facts sufficient to establish that the amount in controversy exceeds the statutory requirements. Because the "record does not foreclose th[e] possibility of such damages," and Defendant has failed to even attempt to rebut the presumption of good faith, the Court cannot determine that it is a "legal certainty" that Plaintiff will not be able to recover the alleged amount in controversy. *Carlin v. United Healthcare Ins. Co. of N.Y., Inc.*, No. 24-cv-8435, 2025 U.S. Dist. LEXIS 228853, at *3 (S.D.N.Y. Nov. 20, 2025). For these reasons, Defendant's Motion to dismiss under Rule 12(b)(1) is **DENIED**.

11

**II. The Court has Personal Jurisdiction over Defendant Under New York State Law**

Defendant next argues that this Court lacks personal jurisdiction over it because "AMP is not subject to general jurisdiction in the state of New York, and Plaintiff fails to plead facts about AMP's contacts with New York that could establish specific jurisdiction." Dkt. No. 32 at 11. Plaintiff contends that the Court has personal jurisdiction over Defendant under New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(2). Plaintiff has the right of it.

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person ***or through an agent***: . . . commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." N.Y. C.P.L.R. § 302(a)(2) (emphasis added). Therefore, under the plain language of the statute, a court may exercise personal jurisdiction over a defendant that has committed tortious acts through another in New York. *Id*. These tortious acts include both the aiding and abetting of another in the commission of a tortious act in the state of New York, and/or by agreeing to a conspiracy that was furthered by an overt act in New York. *See Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (explaining that "Courts have defined 'agent' broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators," and ultimately holding that the court had jurisdiction over the out-of-state defendant pursuant to a conspiracy under N.Y. C.P.L.R. 302(a)(2)); *see also Freedom Mortg. Corp. v. Platinum Home Mortg. Corp.*, No. 1:11-CV-1357, 2012 WL 3989330, at *5 (N.D.N.Y. Sept. 11, 2012) (holding that the court had jurisdiction over the out-of-state defendant under N.Y. C.P.L.R. 302(a)(2) because the defendant was alleged to have committed acts in New York through an agent that aided and abetted an

12

underlying tort).

Here, Plaintiff asserts that the Court has personal jurisdiction over defendant because (i) AMP agreed to and participated in civil conspiracy, which the attack, committed by Defendant's co-conspirators, furthered, and (ii) AMP aided and abetted the assault and battery against Plaintiff by systemically assisting the violent and unlawful CUNY Encampment and its protestors. Dkt. No. 32 at 9. In general, "[t]he bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of section 302(a)(2)." *Chrysler Capital Corp.*, 778 F. Supp. 1260, 1266 (quoting *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975)). To establish personal jurisdiction on a conspiracy theory, Plaintiff must: (1) make a *prima facie* showing of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, and (3) show that the defendant's co-conspirator committed a tort in New York. *Chrysler Capital Corp.*, 778 F. Supp. at *1266. To establish personal jurisdiction under the theory of "aiding and abetting battery," New York state law requires "(1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Doe v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 416 (S.D.N.Y. 2023); *see also Yen Hwa Huang v. Hong Kong & Shanghai Banking Corp.*, No. 20-cv-03548, 2022 U.S. Dist. LEXIS 163235, at *12 (S.D.N.Y. Sep. 9, 2022) (citation omitted) (stating that "tortious aiding and abetting," under New York state law "requires proof of: (1) 'the existence of a primary violation'; (2) 'actual knowledge' on the part of the abettor; and (3) 'substantial assistance' in the violation."). As outlined in the sections below addressing Defendant's challenge to Counts I–II pursuant to rule

12(b)(6), the Court concludes that while Plaintiff has failed to state a claim with respect to Count I, Plaintiff has plead sufficient facts to state a *prima facie* case for Count II. *See Supra* IV. Accordingly, the Court has personal jurisdiction over Defendant. Therefore, Defendant's motion to dismiss under Rule 12(b)(1) is **DENIED**.

### III.    Plaintiff has Failed to State a Claim for Aiding and Abetting Assault and Battery

"New York specifically recognizes a cause of action for aiding and abetting an assault and battery." *Maurizi v. Callaghan*, No. 20-cv-922JLS(F), 2022 U.S. Dist. LEXIS 35099, at *41 (W.D.N.Y. Feb. 25, 2022) (internal quotation marks and citation omitted). Aiding and abetting is thus "a separate cause of action from the underlying tort, with its own elements." *Id*. As discussed above, to state a claim for aiding and abetting assault and battery, New York state law requires "(1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Doe*, 671 F. Supp. 3d at 416.

With respect to the knowledge requirement, the Second Circuit, which is binding on this Court, has repeatedly held that "[a]ctual knowledge, not constructive knowledge (meaning that someone *should have* known something), is required." *Groisman v. Jeffrey Zwick & Assocs.*, No. 25-375-cv, 2026 U.S. App. LEXIS 166, at *10 (2d Cir. Jan. 6, 2026); *see also Krys v. Pigott,* 749 F.3d 117, 128 (2d Cir. 2014) (stating that "under New York law, a complaint adequately alleges the knowledge element of an aiding and abetting claim when it pleads not . . . constructive knowledge, but actual knowledge") (internal quotation marks and citations omitted). The Second Circuit has distinguished "actual knowledge" from "constructive knowledge." *See Krys v. Butt*,

14

486 F. App'x 153, 157 (2d Cir. 2012); *see also Krys*, 749 F.3d at 131-32. Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Krys*, 749 F.3d at 127 (cleaned up). Ultimately, "to survive a motion to dismiss, a plaintiff must allege facts giving rise to a 'strong inference' of actual knowledge of the underlying tort." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367–68 (S.D.N.Y. 2007) (citation omitted).

Plaintiff contends that there is another standard that could also apply here: "foreseeable risk." Dkt. No. 32 at 10. Under this standard, a "defendant may be liable for aiding and abetting a wrongful enterprise's tortious act where the defendant has systemically supported the enterprise and the act was a foreseeable risk of the enterprise's wrongful conduct the defendant supported, regardless of whether the defendant knew about or directly assisted the act." *Id*. In support of this position, Plaintiff points to two cases: *Twitter v. Taamneh*, 598 U.S. 471, 486 (2023) and *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Neither case dealt with a claim of aiding and abetting under New York state law. Instead, both cases discussed federal statutes. Therefore, in asking the Court to apply the foreseeable risk standard set forth in those cases, Plaintiff essentially asks the Court to depart from decades of Second Circuit authority requiring actual knowledge—the Court declines to do so.

Having determined that the foreseeable risk standard does not apply here, and having further set forth the correct standard for aiding and abetting claims in this district, the Court next looks to see whether the allegations in the Complaint support a 'strong inference' of AMP's actual knowledge of the assault and battery on Plaintiff. Having reviewed the four corners of the Complaint, the Court concludes that Plaintiff has failed to allege actual knowledge.

15

The Complaint is bereft of any allegations that would support a finding that AMP had actual knowledge of the assault and battery. At best, the Complaint showed "red flags," that is, it showed that AMP was involved in or directed activities which it should have known could lead to Plaintiff's assault and battery. *See In re Stillwater Asset Backed Offshore Fund Ltd.*, 2018 U.S. Dist. LEXIS 54558, at *31-33 (S.D.N.Y. Mar. 30, 2018). Therefore, at best, Plaintiff has alleged AMP's constructive knowledge of the assault and battery. For the reasons outlined above, such knowledge is insufficient to support a claim for aiding and abetting assault and battery. The Motion is thus **GRANTED** with respect to Count I and Count I is **DISMISSED**.

### IV. Plaintiff has Stated a Claim for Civil Conspiracy to Commit Assault and Battery

To state a claim for civil conspiracy, "a plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *AT&T Corp. v. Atos IT Sols. & Servs.*, 705 F. Supp. 3d 206, 235 (S.D.N.Y. 2023).

#### a. Plaintiff States a *Prima Facie* Case for Conspiracy

To plead a claim for conspiracy under New York law, a plaintiff must allege (a) an agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury. The Complaint meets all three elements here.

##### i. Agreement

Here, the Complaint alleges the existence of an agreement between AMP and the co-conspirators that attacked Plaintiff. Specifically, the Complaint alleges that AMP organized and

supported the very encampment Plaintiff was attacked at, and that on November 24-25, 2023, AMP hosted its "Campus Activism Track" program ("CAT"), an intensive training bootcamp for its campus organizations "designed to help student organizers navigate activism on their college campuses" and "provide [students] with the tools and resources [they] need to strengthen pro-Palestinian presence on [their] campus." In addition, the Complaint alleges that AMP encouraged the use of violence in defense of the encampments. Accepting these allegations as true, they support a finding of a corrupt agreement.

### ii.   Overt Act

This element requires that "there have been at least one overt act by one of the conspirators in furtherance of the unlawful plan." *Chrysler Capital Corp.*, 778 F. Supp. at 1267. The allegations in the Complaint satisfy this element because Plaintiff has alleged that AMP's co-conspirators attacked him in defense of their encampments in furtherance of their plan to take over college campuses. Compl. ¶ 352.

### iii.   Intentional Participation

The allegations in the Complaint satisfy the third requirement because they allege that AMP intentionally participated in the common plan to defend the encampments. Plaintiff alleges that AMP not only issued directives to the encampments, but it also provided funding, training resources, and social media support. The Complaint also alleges that AMP's Executive Director Osama Abuirshaid visited the Columbia encampment and gave a speech during which he encouraged protestors at the encampments to "fight."

### i.   Damage or Injury

This element is satisfied here, through Plaintiff's allegations that he "suffered bruises and

wounds, primarily to his torso, and had to go to an urgent care facility for examination," and "physical therapy for his arm and shoulder which were injured during the attack, which continues to this day." Compl. ¶ 129.

Viewed in the light most favorable to the Plaintiff, the allegations in the Complaint are sufficient to make out a prima facie case of conspiracy. Having established a *prima facie* case for conspiracy, the Court now considers whether it has personal jurisdiction over AMP. "To establish jurisdiction under § 302(a)," a plaintiff must not only allege a *prima facie* case of conspiracy, "but also must show a sufficient relationship between the defendant and the conspiracy to warrant the inference that the defendant was a member of the conspiracy." *Chrysler Capital Corp.*, 778 F. Supp. at 1268 (internal quotation marks and citations omitted). "[C]ourts have required plaintiffs to show that: (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control,' or 'at the request of or on behalf of' the out-of-state defendant." *Id*. (citations omitted), The Court addressees each in turn below.

a.    AMP had Awareness of the Effects in New York of its Activity

This element is satisfied here, where the Complaint alleges that AMP's Executive Director, Osama Abuirshaid, went to Columbia's encampment on April 24, 2024 made a fiery speech to the encampment protestors to galvanize them and encourage them in their violent, illegal activities and defend them with the false narrative that they were being persecuted for engaging in protected speech. Abuirshaid declared to the NSJP protestors that there was a "war" on them in America and against their First Amendment rights, and that police were repressing

18

them. Abuirshaid shouted that AMP and the protestors at the encampment were "going to continue to fight" until they achieved their goal.

   b. The Activity of the Co-conspirators in New York was to the Benefit of the Out-of-State Conspirators

This element is met through Plaintiff 's allegation that one of AMP's objectives was to disrupt college campuses. Compl. ¶ 88. AMP allegedly accomplished their objective by encouraging violence at protests as well as in developing and disseminating the Day of Resistance Toolkit, Student Toolkit, and Solidarity Toolkit, in response to which hundreds of SJP chapters and affiliates on hundreds of campuses commenced protest campaigns in accord with NSJP's orders and toolkit materials. Compl. ¶ 87. These protests include "Day of Resistance" protests on October 12, 2023, and "Student Week of Resistance" protests during October 18-25, 2023. Compl. ¶ 87.

   c. AMP's Co-conspirators Acting in New York Acted at the Direction of, or Under the Control of, or at the Request of, or on Behalf of AMP

The Complaint alleges enough to satisfy this element through its allegations that AMP assisted with the CUNY Encampment's creation for violent and unlawful purposes (Compl. ¶ 215), and that The Columbia NSJP chapter that AMP supported and directed also assisted in creating the CUNY encampment. Compl. ¶¶ 103, 160-168, 186-189, 198-199, 244-261, 287, 295- 297. For these reasons, Plaintiff's allegations have met the requirements for this Court to assert jurisdiction over AMP under N.Y. C.P.L.R. § 302(a)(2).[5] Accordingly, the Motion is **DENIED** with respect to its request for relief pursuant to 12(b)(1).

---

[5] Defendant also seeks dismissal of Plaintiffs conspiracy claim as duplicative of its aiding and abetting claim. Because the aiding and abetting claim is dismissed, Defendant's request is **DENIED**.

19

## CONCLUSION

The Court has considered all of Defendant AMP's arguments. To the extent any argument raised by AMP is not addressed specifically, those arguments are either moot or without merit considering this preliminary stage of the case. For the reasons outlined above, the Motion is **GRANTED** with respect to Count I; the Motion is otherwise **DENIED**.

The Court will afford Plaintiff the opportunity to amend his Complaint to attempt to cure its deficiencies, if he wishes to do so. Rule 15(a)(2) states "the court should freely give leave when justice so requires." *Id*. The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." While the Court is skeptical that Plaintiff could amend the already voluminous Complaint to survive a motion to dismiss, it will not foreclose him from trying. Plaintiff's amended Complaint, should he choose to file one, is due by **April 10, 2026**. The Court reminds Plaintiff's attorney that Rule 8 requires a short and plain statement. While the Court understands how important this Complaint is to the parties, the Court sees no reason for the Complaint to be more than 75 pages. The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. Nos. 23 & 26. The Clerk of Court is respectfully directed to strike the Opinion and Order at Dkt. No. 46.

**SO ORDERED.**

Dated:    April 1, 2026

      New York, NY                 **ANDREW L. CARTER, JR.**

                                       **United States District Judge**

20