CONTARINO ROTH

Contarino Roth LLC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431

Jacob William Roth
561-872-6508
jroth@contarinoroth.com

August 11, 2026

*VIA EMAIL*

National Students for Justice in Palestine
C/O
Jonathan Wallace
jonathan.wallace80@gmail.com

**Re: *Horowitz v. AJP Educational Foundation, Inc., et al.*, Case No. 25-cv-03412 (ALC) (S.D.N.Y.) — Jurisdictional Discovery Demands**

Dear Jonathan:

Pursuant to our conversation, attached with this letter are Plaintiff's jurisdictional discovery requests and proposed discovery plan. During our call, you mentioned that there are two members of NSJP's Steering Committee who lived in New York at the time that the Complaint was filed for this matter and that this would be the basis for NSJP to dismiss the matter for lack of diversity jurisdiction. You mentioned that you are amenable to providing discovery materials to support NSJP's claim, though you stated that NSJP is broadly unwilling to provide information about the identities of its membership and that it prefers to submit such information for *in camera* review or in an indirect fashion through a declaration that you would execute.

Our position is that neither of those options is appropriate because they would prejudice Plaintiff by undermining the adversarial process: they would deny Plaintiff his right to evaluate and engage with the information and evidence that NSJP would use as a basis for dismissing his claim. Whether the information and evidence NSJP produces for its alleged New York members at the relevant time actually shows they were citizens of New York—and not just temporary residents—is a material issue of fundamental importance, and Plaintiff cannot be denied the ability to engage with that information and evidence fully.

Attached with this letter are the materials and information Plaintiff initially requests for the issue of diversity jurisdiction. Alongside the requests are proposed discovery management terms to provide structure, timing, and bounds for the requests. Because NSJP's operational structure and governance are unknown to Plaintiff, the issue of who constitutes its membership (and on what basis) is essential for determining whose citizenship can be attributed to NSJP. And for those individuals whom NSJP claims are members, whether those individuals may be considered members whose citizenship is attributable to NSJP and whether any are citizens of New York are further essential issues. The attached requests therefore seek records and information necessary for resolving these essential issues.

Plaintiff's proposed discovery management includes timing for NSJP to file its FRCP 7.1 disclosure. As we discussed previously, NSJP needs to file its Rule 7.1(a)(2) disclosure, which consists of the following:

> In an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party or intervenor must, unless the court orders otherwise, file a disclosure statement.

> The statement must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party or intervenor:
>
> > **(A)** when the action is filed in or removed to federal court, and
> >
> > **(B)** when any later event occurs that could affect the court's jurisdiction under § 1332(a).

NSJP's Rule 7.1 disclosure is already overdue, as the time to file the statement was with your notice of appearance, as per Rule 7.1(b):

> A party, intervenor, or proposed intervenor must:
>
> > **(1)** file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court; and
> >
> > **(2)** promptly file a supplemental statement if any required information changes.

We consider the requested discovery materials to be essential for justly and non-prejudicially resolving the diversity jurisdiction issue. Please let us know if NSJP will agree to the proposed discovery plan.

Respectfully submitted,

*/s/ Jacob William Roth*

Jacob William Roth

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | | |
|---|---|---|
| AMI HOROWITZ | : | |
| Plaintiff, | : | |
| v. | : | Civil Case No. 1:25-cv-3412 |
| AJP EDUCATIONAL FOUNDATION, INC., et al. | : | |
| Defendant. | : | |

------------------------------------------------------------X

**PLAINTIFF'S DISCOVERY REQUESTS AND PROPOSED DISCOVERY PLAN FOR JURISDICTIONAL DISCOVERY REGARDING DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE**

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Ami Horowitz, by his undersigned counsel, hereby requests that Defendant National Students for Justice in Palestine ("NSJP") provide discovery as specified herein. The purpose of this requested discovery is to determine (i) every individual or entity whose citizenship was attributable to NSJP on April 24, 2025; (ii) whether the two persons NSJP contends were New York citizens were legally members of NSJP on that date; (iii) those persons' actual domiciles on that date; and (iv) whether NSJP's proposed disclosure is complete and accurate.

These demands are directed to jurisdictional facts and are not intended to seek merits discovery.

## DEFINITIONS

1. “**AMP”** shall mean Defendant AMP, including any board members, committee members, agents, employees, representatives, personnel, members, and any other persons acting or purporting to act on its behalf or subject to its control.

2. **“NSJP”** or **“YOU”** shall mean National Students for Justice in Palestine, including board members, committee members, agents, employees, representatives, personnel, members, and any other persons acting or purporting to act on its behalf or subject to its control. It shall also means every predecessor, successor, committee, working group, project, program, account, or body through which it acted, including persons acting on its behalf.

3. “**RELEVANT DATE**” means April 24, 2025, the date this action was filed.

4. “**RELEVANT PERIOD**” means January 1, 2023, through May 31, 2025. For documents bearing on an individual’s domicile, the period extends from January 1, 2024, through December 31, 2025, because evidence before and after the Relevant Date may bear on domicile and intent on the Relevant Date.

5. “**STEERING COMMITTEE**” means NSJP’s national steering committee and any body performing the same or substantially similar leadership,

governance, coordinating, or decision-making functions, regardless of its formal name.

6. “**ATTRIBUTED PERSON**” means every individual or entity whose citizenship NSJP contends was, may have been, or should be attributed to NSJP for purposes of 28 U.S.C. § 1332 on the Relevant Date.

7. “**MEMBER**” or “**MEMBERSHIP**” is used functionally and without assuming a legal conclusion. It includes any individual or entity that, under NSJP’s rules, practices, understandings, or applicable law, possessed a right or status involving admission, removal, governance, voting, selection of leaders, access to internal decision-making, authority to bind or represent NSJP, control over funds or accounts, or another indicator of membership. A person is not included within the definition solely because the person donated, subscribed to public communications, attended an event, or expressed support.

8. “**GOVERNANCE PARTICIPANT**” means any officer, steering-committee member, coordinator, director, employee, contractor, volunteer, chapter representative, fiscal sponsor representative, or other person who had authority to make, approve, implement, or veto decisions for NSJP during the Relevant Period.

9. “**CHAPTER**” or “**AFFILIATE**” means any campus or non-campus organization recognized, listed, supported, networked, trained, coordinated,

represented, or treated by NSJP as a chapter, affiliate, coalition member, partner, or participant in an NSJP program.

10. “**WESPAC**” means Westchester People’s Action Committee Foundation/Fund and any entity that served as NSJP’s fiscal sponsor, financial administrator, or pass-through.

11. “**IDENTIFY**” for a person, means state the person’s full name, pseudonyms or aliases used for NSJP work, position or role, dates of service, and last known business contact information.

12. “**DOCUMENT**” and “**COMMUNICATION**” have the broad meanings used in Rule 34 and include electronically stored information, messages in Signal, WhatsApp, Telegram, Slack, Discord, any other messaging applications or services, email, text, shared drives, project-management tools, social-media direct messages, and records maintained by a fiscal sponsor or service provider.

13. “**DOCUMENTS SUFFICIENT TO SHOW**” means the smallest noncumulative set of documents that fairly establishes the fact requested.

14. “**PERSON**” means any natural person or any legal entity, including but not limited to any business or governmental entity, organization, or association.

15. “**RELATE**” or “**RELATING**” means consisting of, referring to, reflecting, concerning, or being in any way logically or factually connected with the matter discussed.

16. The terms "**AND**" and "**OR**" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise fall outside the scope of this request.

17. The terms "**ALL**," "**ANY**," or "**EACH**" encompass any and all of the matter discussed.

18. "**INCLUDING**" means including, but not limited to.

19. The use of singular form includes plural, and vice versa.

20. The use of present tense includes past tense, and vice versa.

## INSTRUCTIONS

1. All objections to the production of Documents requested herein shall be made in writing and delivered by email to the undersigned attorneys (jroth@contarinoroth.com and jcontarino@contarinoroth.com) on or before the date set for production.

2. All Documents are to be produced as they are kept in the usual course of business including any labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein. If there are no Documents in response to a particular request, or if You withhold any responsive Documents or categories of Documents based on any objections, Defendant shall state so in writing.

3. Electronically stored information (ESI) must be produced in its original native format including its accompanying metadata. For example:

a) Documents created using Microsoft Word must be produced as .DOC or .DOCX files; and

b) emails must be produced in a form that readily supports import into standard email client programs, or the form of production should adhere to the conventions set out in the internet email standard.

4. ESI should be produced on appropriate electronic media of Defendant's choosing that does not impose an undue burden or expense upon Plaintiff. Defendant should decrypt or provide Plaintiff with passwords to any responsive ESI included in Defendant's productions.

5. These requests call for the production of all responsive Documents in Your possession, custody or control, or in the possession, custody or control of Your agents, employees, representatives, attorneys, and any other persons acting or purporting to act on his behalf or subject to his control.

6. In responding to these requests, include Documents obtained on Your behalf by Your counsel, employees, agents, or any other persons acting on Your behalf. If Your response is that the Documents are not within Your possession or custody, describe in detail the unsuccessful efforts You made to locate and/or obtain

each such Document. If Your response is that Documents are not under Your control, identify who has control and the location of the Documents.

7. If any Document was, but no longer is, in Your possession, subject to Your control, or in existence, include a statement:

a) identifying the Document;

b) describing where the Document is now;

c) identifying who has control of the Document;

d) describing how the Document became lost or destroyed or was transferred; and

e) identifying each of those persons responsible for or having knowledge of the loss, destruction, or transfer of the Document from Your possession, custody, or control.

8. Each request contemplates production of all Documents in their entirety. If only a portion of a Document is responsive to one or more requests, the Document shall be produced in its entirety.

9. If any Document is withheld in whole or in part for any reason including, without limitation, a claim of privilege or other protection from disclosure such as the work product doctrine or other business confidentiality or trade secret protection, set out separately with respect to each withheld Document:

a) the ground of privilege or protection claimed;

b) every basis for the privilege or protection claimed;

c) the type of Document;

d) its general subject matter;

e) the Document's date; and

f) other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by FRCP 26(b)(5), the court's local rules, and the judge's individual practice rules.

10. If You object to any document request on any ground other than privilege, You must specify:

a) the part of the request that is objectionable and respond and allow inspection of materials responsive to the remainder of the request; and

b) whether any responsive materials are being withheld on the basis of an objection.

11. To the extent You contend that a Document contains information that should be protected from disclosure (based on the attorney-client privilege, work product doctrine, or another protection) and non-privileged information, the non-privileged portions of the Document must be produced. For each such Document, indicate the portion of the Document withheld by stamping the words "MATERIAL

REDACTED AS [BASIS FOR PROTECTION]" on the Document in an appropriate location that does not obscure the remaining text.

12. If there are no Documents in response to any particular request, You shall state so in writing and describe the search efforts you conducted to determine that there are no Documents.

13. Examples of responsive items set out in any request should not be construed to limit the scope of the request.

14. For each response, You must identify the Bates number of the documents responsive to that specific request. *See* Fed. R. Civ. P. 34(b)(2)(E)(i); *see also Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13CV5390ILGCLP, 2017 WL 9732082, at *4 (E.D.N.Y. June 5, 2017); *Ng v. HSBC Mortg. Corp.*, No. CV-07-5434 RRM VVP, 2009 WL 205048, at *3 (E.D.N.Y. Jan. 27, 2009).

15. Requests for production should be read to encompass any and all items responsive to the request.

16. These requests are continuing, and Your response to these requests must be promptly supplemented when appropriate or necessary in accordance with Federal Rule of Civil Procedure 26(e).

## I. REQUESTS FOR INTERROGATORIES

**INTERROGATORY NO. 1:** Identify every Attributed Person on the Relevant Date. For each, state the category of membership or other status on which NSJP

relies; the dates that status began and ended; the rights, duties, and authority associated with that status; and the legal and factual basis for attributing that person's citizenship to NSJP.

**INTERROGATORY NO. 2:** State the jurisdiction whose law NSJP contends governs its formation, internal affairs, membership, and capacity; identify every organizing or governing instrument; and explain how NSJP determines who is and is not a Member.

**INTERROGATORY NO. 3:** Describe every formal or informal membership category that existed during the Relevant Period, including eligibility, application or nomination, approval, onboarding, dues or financial obligations, voting rights, governance rights, disciplinary or removal procedures, resignation procedures, and records maintained for that category.

**INTERROGATORY NO. 4:** Identify every person who served on the Steering Committee during the Relevant Period, including Sean E. Routledge (also known as Sean Eren), Carrie Zaremba, Dylan Kupsh, and every other person, and state each person's dates of service, title or function, selection method, selector(s), removal method, authority, and voting or consensus rights.

**INTERROGATORY NO. 5:** Identify every person or entity that selected, appointed, elected, approved, supervised, removed, or had authority to remove any Steering Committee member during the Relevant Period, and describe that authority.

**INTERROGATORY NO. 6:** Identify every Governance Participant on the Relevant Date who was not a Steering Committee member, and state the person's role, authority, dates of service, and whether NSJP contends that person was a Member or Attributed Person.

**INTERROGATORY NO. 7:** Describe NSJP's complete organizational and decision-making structure on the Relevant Date, including committees, working groups, officers, coordinators, regional bodies, chapter representatives, employees, contractors, and persons authorized to bind NSJP, control accounts, approve expenditures, issue public statements, or direct chapters or campaigns.

**INTERROGATORY NO. 8:** Describe in detail NSJP's relationships with AMP/AJP and WESPAC during the Relevant Period, including formation, management, supervision, staffing, fiscal sponsorship, payment of expenses,

account ownership, contracting authority, record custody, selection or removal of NSJP personnel, and whether any such entity or its representatives were Members or Attributed Persons.

**INTERROGATORY NO. 9:** Describe NSJP's relationship with Chapters or Affiliates during the Relevant Period, including admission or recognition, affiliation criteria, rights and obligations, dues, voting or representation, access to resources, ability to select NSJP leaders, discipline or disaffiliation, and whether any Chapter or Affiliate was a Member or Attributed Person.

**INTERROGATORY NO. 10:** For each person NSJP contends was a New York citizen on the Relevant Date, state all facts supporting that contention, including every residence occupied; dates of physical presence; claimed permanent home; intent to remain or return; voter registration; driver's license or identification; vehicle registration; tax filing status; employment; school enrollment and tuition status; lease or ownership interest; utility service; banking and insurance address; family and community ties; and any planned or completed move.

**INTERROGATORY NO. 11:** For each person identified in response to Interrogatory No. 10, state all facts that could support domicile outside New York

or show that the person's presence in New York was temporary, including another maintained residence, out-of-state voter registration or license, out-of-state tax filing, temporary school or employment status, plans to depart, and location of personal property and close family.

**INTERROGATORY NO. 12:** Identify every document, database, roster, directory, channel, account, calendar, archive, device, and custodian searched or consulted to determine NSJP's membership and citizenship for Rule 7.1 disclosures or the anticipated Rule 12(b)(1) motion. Exclude privileged communications and counsel's mental impressions, but identify the nonprivileged factual source and custodian.

**INTERROGATORY NO. 13:** Identify every official or internal communications platform, group, channel, listserv, shared drive, domain, email account, messaging group, and social-media account used for governance or Steering Committee business during the Relevant Period, and identify the owner, administrator, and persons with administrative access on the Relevant Date.

**INTERROGATORY NO. 14:** Identify every person who joined, left, resigned from, was removed from, or changed status in the Steering Committee or any other

membership or governance category between January 1, 2025, and May 31, 2025, with the effective date and reason for the change.

**INTERROGATORY NO. 15:** Identify every pleading, declaration, affidavit, verified response, deposition, or other statement by NSJP or on its behalf in another proceeding that described NSJP's membership, Steering Committee, governance, relationship with AMP/AJP or WESPAC, or relationship with Chapters or Affiliates; identify the person who supplied or verified the facts.

**INTERROGATORY NO. 16:** Describe the inquiry NSJP undertook to ensure that its Rule 7.1 disclosure and anticipated jurisdictional motion are complete and accurate, including the categories of records searched, the persons interviewed, and the date range reviewed, without revealing privileged communications or attorney mental impressions.

## II. REQUESTS FOR DOCUMENTS

**DOCUMENT REQUEST NO. 1:** All constitutions, bylaws, charters, articles, operating rules, membership rules, committee charters, governance manuals, policies, memoranda of understanding, and other organizing or governing documents in effect at any time during the Relevant Period, including drafts and prior versions sufficient to show changes.

**DOCUMENT REQUEST NO. 2:** All organizational charts, leadership directories, internal descriptions of structure, onboarding materials, handbooks, or presentations describing NSJP's governance, membership, Steering Committee, officers, coordinators, working groups, or Chapters or Affiliates.

**DOCUMENT REQUEST NO. 3:** All rosters, lists, directories, databases, spreadsheets, contact lists, access-control lists, calendars, or records identifying Steering Committee members or other Governance Participants during the Relevant Period.

**DOCUMENT REQUEST NO. 4:** All documents sufficient to show the nomination, selection, election, appointment, approval, onboarding, term, resignation, removal, replacement, or succession of each Steering Committee member during the Relevant Period.

**DOCUMENT REQUEST NO. 5:** All agendas, minutes, attendance records, voting records, consensus logs, decision logs, and governance records sufficient to show who participated in Steering Committee or equivalent leadership meetings between January 1, 2024 and May 31, 2025.

**DOCUMENT REQUEST NO. 6:** All documents describing the rights, duties, authority, access, obligations, confidentiality requirements, decision-making role, or representative status of a Steering Committee member or any other membership or governance category.

**DOCUMENT REQUEST NO. 7:** All documents using the terms “member,” “membership,” “steering committee,” “leadership,” “core team,” “national team,” “organizer,” “coordinator,” “representative,” “delegate,” “chapter,” “affiliate,” “coalition,” or materially similar terms to define or describe NSJP's internal structure.

**DOCUMENT REQUEST NO. 8:** Documents sufficient to show the membership, administrators, owners, and access permissions of each internal communications channel or repository used for Steering Committee or governance business on the Relevant Date. Message content need not be produced under this request except to the extent it identifies role, status, authority, selection, or membership.

**DOCUMENT REQUEST NO. 9:** All documents sufficient to identify every Attributed Person on the Relevant Date, including records of status, dates of service, authority, and contact information.

**DOCUMENT REQUEST NO. 10:** All nonprivileged documents and data that support, contradict, qualify, or were relied upon for NSJP's contention that two Steering Committee members were New York citizens on the Relevant Date.

**DOCUMENT REQUEST NO. 11:** For each alleged New York citizen, documents sufficient to show each residence occupied from January 1, 2024, through December 31, 2025, including leases, deeds, housing agreements, utility records, school housing records, or official address records, with sensitive account and personal identifiers redacted.

**DOCUMENT REQUEST NO. 12:** For each alleged New York citizen, documents sufficient to show voter registration, driver's license or state identification, vehicle registration, and the state and residency status under which the person filed federal and state income-tax returns for tax years 2024 and 2025. Production may be limited to official records or redacted portions sufficient to show state, address, residency classification, and filing date.

**DOCUMENT REQUEST NO. 13:** For each alleged New York citizen, documents sufficient to show employment, school enrollment, tuition classification, professional licensing, insurance, banking address, and community or family ties bearing on domicile on the Relevant Date.

**DOCUMENT REQUEST NO. 14:** All nonprivileged communications or records in NSJP's possession reflecting any alleged New York citizen's intent to remain in New York, intent to leave, temporary stay, move, maintained residence elsewhere, or claimed permanent home during the domicile period.

**DOCUMENT REQUEST NO. 15:** All documents sufficient to show changes in Steering Committee or Membership status between January 1, 2025, and May 31, 2025, including resignation, removal, replacement, leave, inactive status, or retroactive designation.

**DOCUMENT REQUEST NO. 16:** All agreements, memoranda, policies, correspondence, and records sufficient to show AMP/AJP's role in creating, managing, staffing, supervising, funding, operating, representing, or maintaining records for NSJP during the Relevant Period.

**DOCUMENT REQUEST NO. 17:** All tax filings, charitable registrations, insurance applications, vendor forms, fiscal-sponsorship filings, bank onboarding documents, or governmental submissions in which NSJP, AMP/AJP, WESPAC, or a representative described NSJP's legal form, leadership, members, managers, principal location, or responsible persons.

**DOCUMENT REQUEST NO. 18:** All pleadings, declarations, affidavits, verified discovery responses, deposition transcripts, organizational disclosures, and evidentiary submissions in other proceedings that describe NSJP's membership, citizenship, Steering Committee, organizational structure, or relationships with AMP/AJP, WESPAC, Chapters, or Affiliates.

**DOCUMENT REQUEST NO. 19:** Documents sufficient to show the custodians, retention policies, backup sources, auto-delete settings, and preservation steps for NSJP governance and membership records, including records on encrypted or disappearing-message platforms.

**DOCUMENT REQUEST NO. 20:** The underlying nonprivileged documents used by NSJP as a basis for its Rule 7.1(a)(2) disclosure statement to establish the identity and citizenship of every listed person or entity.

**DOCUMENT REQUEST NO. 21:** All declarations or affidavits NSJP relies on to support any claim for lack of diversity jurisdiction regarding NSJP in this matter, together with every nonprivileged exhibit and underlying document on which each declarant relies.

**DOCUMENT REQUEST NO. 22:** Documents sufficient to show whether any Attributed Person is itself an unincorporated entity and, if so, the identity and citizenship of every individual or entity whose citizenship is attributed through each layer of ownership or membership.

## III. DEPOSITION TOPICS

NSJP shall designate one or more witnesses prepared to testify about information known or reasonably available to the organization.

**TOPIC NO. 1:** NSJP's legal form, formation, governing law, organizing documents, and complete organizational structure on the Relevant Date.

**TOPIC NO. 2:** The meaning of Member and membership under NSJP’s rules, practices, and understandings; every membership category; and the rights and obligations associated with each category.

**TOPIC NO 3:** The Steering Committee's membership, selection, removal, terms, authority, voting or consensus procedures, and records during the Relevant Period.

**TOPIC NO. 4:** The identity, status, and basis for attribution of every Attributed Person on the Relevant Date.

**TOPIC NO. 5:** The factual basis and records supporting NSJP's contention that two persons were New York citizens on the Relevant Date, and any contrary facts known to NSJP.

**TOPIC NO. 6:** NSJP's inquiry and record search for its Rule 7.1 disclosure and anticipated Rule 12(b)(1) motion, excluding privileged communications and attorney mental impressions.

**TOPIC NO. 7:** NSJP's relationship with AMP/AJP, including formation, management, staffing, control, funding, record custody, and authority to bind or represent NSJP.

**TOPIC NO. 8:** NSJP's relationship with Chapters or Affiliates, including recognition, autonomy, governance rights, voting, representation, dues, control, discipline, and whether any chapter or affiliate is a Member.

**TOPIC NO. 9:** Every Governance Participant and every person authorized to control funds, contracts, websites, domains, communications platforms, or public statements on the Relevant Date.

**TOPIC NO. 10:** NSJP's official and internal communications systems, administrators, custodians, retention, auto-delete settings, and preservation of membership and governance information.

**TOPIC NO. 11:** Changes in membership, Steering Committee composition, or governance status during the five months surrounding the Relevant Date.

**TOPIC NO. 12:** Prior statements by NSJP or its representatives in litigation or public communications concerning its membership, governance, AMP/AJP relationship, fiscal sponsorship, or chapter autonomy.

**TOPIC NO. 13:** The completeness and accuracy of NSJP's interrogatory answers, document production, and Rule 7.1 disclosure.

## IV. LIMITED DISCOVERY FROM EACH ALLEGED NEW YORK MEMBER OF NSJP

After NSJP identifies the two alleged New York citizens, NSJP will either produce discovery for those individuals that tracks with Requests for Production Nos. 11–14 or, if NSJP contends that it does not have the authority or ability to compel such discovery from them, Plaintiff may serve each with a Rule 45 subpoena seeking documents sufficient to establish their domicile on the Relevant Date. The categories shall track Requests for Production Nos. 11–14.

Plaintiff may take a deposition of each of the alleged New York citizens, not to exceed three hours, limited to the following topics:

- Service, authority, and legal status within NSJP;
- dates of participation, service, and authority within NSJP;
- Residences;
- Physical presence;
- Intent to remain or return;
- Voter registration;
- Licensing;
- Taxes;
- Employment or school;
- Maintained homes;
- Family and community ties; and

- Planned or completed moves.

## V. PROPOSED CASE-MANAGEMENT RELIEF

**1.** Within seven days, NSJP shall file a Rule 7.1(a)(2) statement naming and identifying the citizenship of every individual or entity whose citizenship was attributable to NSJP on April 24, 2025.

**2.** Within fourteen days, NSJP shall serve verified interrogatory answers and its document production. It shall not substitute a declaration from counsel for verified party responses or source evidence.

**3.** The Rule 30(b)(6) deposition shall occur within 30 days after written responses. Individual depositions shall occur within fourteen days after the organizational deposition.

**4.** The Court shall stay or defer any Rule 12(b)(6) merits motion by NSJP until the Rule 12(b)(1) issue is resolved. NSJP may file its jurisdictional motion after jurisdictional discovery, and the parties may submit supplemental jurisdictional briefs on a schedule set by the Court.

**5.** The Court shall retain authority to review disputed material *in camera*, but *in camera* submission shall not be the exclusive evidentiary process where Plaintiff has a need to test membership status, completeness, credibility, or domicile.

**6.** Any dismissal based on the discovered citizenship facts should be expressly limited to lack of subject-matter jurisdiction under Rule 12(b)(1),

without prejudice, and without adjudication of the merits or any finding of failure to prosecute or failure to obtain personal jurisdiction.

**7.** NSJP and persons acting on its behalf shall preserve responsive records, including on encrypted and disappearing-message platforms, until the jurisdictional issue and any appeal are finally resolved.

Date: August 11, 2026

**CONTARINO ROTH LLC**

By: /s/ *Jacob William Roth*

Jacob William Roth
CONTARINO ROTH LLC
2255 Glades Rd, Ste 324A
Boca Raton, FL 33431
jroth@contarinoroth.com

Josiah Contarino
101 Eisenhower Pkwy, Ste 300
Roseland, NJ 07068
jcontarino@contarinoroth.com

*Attorneys for Plaintiff*